STATE OF IOWA, appellee, v. CLIFFORD CLAUD HOBBS, appellant.

No. 50000.

(Reported in 107 N.W.2d 238)

JANUARY 11, 1961.

Lawyer, Lawyer & Ray and Charles W. Bowers, all of Des Moines, for appellant.

Norman Erbe, Attorney General, Marion R. Neely, Assistant Attorney General, Ray Hanrahan, County Attorney, and Raymond Fenton, Assistant County Attorney, all of Des Moines, for appellee.

THORNTON, J.—The defendant was convicted of the crime of possession of burglary tools with intent to commit the crime of burglary as defined in section 708.7, Code of Iowa, 1958. He appeals contending the trial court erred in overruling his motions to direct a verdict, for a new trial, and in arrest of judg-

ment. He states the only principal issue before us is: Whether or not the court erred in failing to instruct the jury to acquit for the reason that the State failed to establish one of the essential elements of the offense, namely, the intent to commit burglary or breaking and entering. He argues here the intent required by section 708.7 is a present specific intent to commit burglary and the presumption raised by the statute was rebutted by the testimony of the State's witness, Ray McGee, an accomplice of defendant.

I. Section 708.7 is, in pertinent part: "If any person be found having in his possession at any time any burglar's tools or implements, with intent to commit the crime of burglary, he shall be imprisoned in the penitentiary not more than fifteen years, * * * and the possession of such tools or implements shall be presumptive evidence of his intent to commit burglary."

The evidence shows defendant and McGee were arrested April 4, 1959, between 3:15 and 3:30 a.m. by two Des Moines police officers after an automobile chase of a number of blocks in the city of Des Moines. Defendant was driving his 1951 Buick with McGee riding with him in the front seat. The officers started to follow them and while attempting to get away McGee threw a bag of tools out of the back door of the Buick. The officers stopped the Buick within a short distance after the tools were thrown out. At the time of the arrest one officer recovered the tools, consisting of two crowbars, a punch, vice pliers, sledge hammer and other tools. A store owner testified to facts showing his store had been broken into March 20, 1959, and his safe removed. He was able to identify the safe after it was recovered by the Des Moines police by a particular type of paint on the safe and by armored plate which he had installed on it. Qualified police officers testified the tools were burglar's tools and marks found on the safe were made by the crowbars thrown from defendant's Buick. Paint chips from defendant's Buick and the safe were analyzed by the F. B. I. A special agent testified from the analysis and his examination the paint chips from the trunk of the Buick came from the same surface as the chips from the safe or another metal surface painted with the same paints.

■■ The above is sufficient to sustain the conviction. State v. Smith, 247 Iowa 500, 73 N.W.2d 189; State v. McHenry, 207 Iowa 760, 223 N.W. 535; and State v. Kappen, 191 Iowa 19, 180 N.W. 307. The tools having been in defendant's car and thrown therefrom after a chase by police at 3 a.m. show apparent possession and sufficient circumstances of a general burglarious intent, together with presumption in the statute to take the case to the jury and cast the burden of explaining his possession and intent on the defendant. State v. Furlong, 216 Iowa 428, 249 N.W. 132. The testimony connecting defendant's Buick and tools with the burglary of the store is evidence of the intent, purpose for which defendant kept, possessed such tools. State v. Smith, State v. McHenry and State v. Kappen, all supra.

II. McGee, the accomplice, testifying for the State said that defendant and he broke into the store, removed and opened the safe using the tools above described, that he threw the tools out of the car at defendant's direction and that defendant and he owned the tools. On cross-examination he testified:

"At the time the police started following us * * * we were going to drop the tools off and then go home. At the time the police stopped us we did not have any intention of breaking into any place, nor did we have any intention of breaking into any place at the time they started following us."

■ Defendant bases his argument upon the quoted portion of McGee's testimony. He contends this negatives a specific present intent to commit burglary and the State is bound by the testimony of its own witness. He is correct in that such testimony does negative a specific present intent. However, the argument is not sound for two reasons, (1) the intent required by section 708.7 is not a specific present intent, and (2) under the circumstances the State is not bound by its own witness, McGee.

Webster defines intent as follows: "Attention, purpose, 1. a turning of the mind toward an object, hence a design, purpose, intention * * *" and states the following are synonyms: "Design, purpose * * * object, end, aim, plan."

The intent required by section 708.7 is a general burglarious

intent, purpose, plan or design of the possessor of the tools for having such tools. The inquiry is, Does he possess the tools for the purpose of using them to break and enter feloniously?

In the cases cited by defendant we find Mahar v. Lainson, 247 Iowa 297, 72 N.W.2d 516, is a habeas corpus proceeding to test the constitutionality of section 708.7. There the petitioner contended the failure of the section to define burglar's tools or to specifically name the prohibited tools or implements was violative of the due process clauses of the State and Federal Constitutions. In denying relief we did not pass on the exact question now before us. But in the course of the opinion, State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A. L. R. 1301, also cited by defendant, is cited with approval. With reference thereto we said at page 301 of 247 Iowa and page 519 of 72 N.W.2d: "There the court pointed out that an intent to use for burglarious purposes the tools found in one's custody is essential to a violation of the statute making it a felony for one to have in his custody tools or devices adapted, designed or commonly used for breaking and entering." There is nothing in the Mahar case to indicate the required intent is a present specific intent.

In State v. Hefflin, supra, at page 248 of 338 Mo., page 945 of 89 S.W.2d, the court said: "We have examined the statutes of fourteen other states wherein decisions have been rendered on the point here under discussion, and it appears that in all of them the statute either expressly, or by intendment as construed in such decisions, requires a criminal intent upon the part of the possessor of alleged burglar's tools to use them burglariously or for some criminal purpose. And considering the harshness of a contrary construction we think there is enough in our statute to justify us in holding it means the tools and implements referred to therein must be made, mended, possessed, etc., by the accused with the general intent that they shall be used for a burglarious purpose."

The Missouri court in State v. Lorts, Mo., 269 S.W.2d 88, approves its prior holding in Hefflin and holds the testimony of larceny of a safe and the similarity of marks on crowbars found in the accused's car with marks on the safe tended to establish the possession of said tools for a burglarious purpose and was competent.

■ We have held evidence connecting the accused with recent burglaries competent and sufficient to show the intent and purpose for which the accused kept or possessed the tools or implements as pointed out in Division I. Such evidence is evidence of the general intent or purpose for which the accused kept and used the tools, not of present specific intent. And so is evidence of the general circumstances as in State v. Furlong, 216 Iowa 428, 249 N.W. 132.

The required intent is stated in 12 C. J. S., Burglary, section 69, at page 754, as follows:

"It is sufficient to show that defendant had a general intent to use tools or implements for a burglarious purpose, and the intention as to any particular time or place of using the same is not material. * * *."

To the same effect see 9 Am. Jur., Burglary, section 86, page 281, and 103 A. L. R. 1313. We are unable to find authority for defendant's contention.

■ III. Defendant argues the testimony of McGee rebuts the presumption of intent in the statute. This is obviously incorrect. McGee's testimony merely negatives a present specific intent, in no manner or degree does it negative or contradict the presumption or the evidence connecting defendant with a recent burglary showing general burglarious purpose or intent.

■ In support of this argument defendant contends the State is bound by the testimony of its witness, McGee, on the question of intent. He cites The People v. Hare, 57 Mich. 505, 24 N.W. 843; Beh v. Van Ness, 190 Iowa 151, 180 N.W. 292; State v. French, 240 Iowa 1, 35 N.W.2d 1; State v. Cotton, 240 Iowa 609, 33 N.W.2d 880; and State v. Peirce, 178 Iowa 417, 159 N.W. 1050, as supporting this proposition. An examination of these authorities will demonstrate the rule contended for by defendant is inapplicable under the circumstances presented here. In the Hare case the defendant, Hare, was accused of the murder of one McCrone on the night of October 6, 1883. The only witness testifying to facts of the commission of the crime was one Billington, a confederate and accomplice of Hare. Billington testified to the altercation between the deceased and the accused as occurring before the closing of Collins' saloon,

and that he, Billington, and Hare threw deceased's body into the canal. The body was found a few days later. The defendant requested an instruction confining the prosecution to the time and place mentioned by Billington because the prosecution relied thereon and there was no other testimony as to the time and place. The Michigan court held the request was proper. The court at page 519 of 57 Mich., page 850 of 24 N.W. said:

"* * * It was before the closing of Collins' saloon, and the People must be held bound by the testimony of Billington, because the only proof of the striking of the fatal blow by Hare is that given by their own witness, upon whose testimony the whole theory for conviction rests."

Here the State did not rely solely on the testimony of McGee. Before McGee testified the State introduced evidence connecting the tools in defendant's possession with a prior recent burglary, and his testimony on direct examination did not touch present specific intention.

In Beh v. Van Ness, supra, section 3069, Code of Iowa, 1897, now section 537.2, Code of Iowa, 1958, was involved. This section 537.2 provides in part, "All contracts in writing * * * import a consideration." We there said, at page 154 of 190 Iowa and page 293 of 180 N.W.:

"There is no evidence that F. N. Van Ness received a separate or independent consideration for the notes, and plaintiff is not aided upon this point by the provisions of the statute referred to. By taking the stand in his own behalf and testifying that the consideration of the notes was commissions earned or money advanced by him in payment of interest, taxes, and other expenses pertaining to the loans negotiated by him for the defendant and her husband, he is bound by his testimony. The law will not import a different or other consideration. * * *"

In State v. French, supra, at page 22 of 240 Iowa and page 12 of 35 N.W.2d, we said:

"The State vouched for the worthiness of these men as witnesses. While it was open to the State to show otherwise by other witnesses, it did not do so, and made no attempt to. There was no evidence to the contrary. The State is now bound by the testimony. * * *"

In State v. Cotton, supra, in dealing with a question of the extent of cross-examination there is merely the statement (at page 640 of 240 Iowa), "* * * the State had vouched for his credibility in offering him as a witness." And in State v. Peirce, supra, is a statement that objections to questions as being an attempt to impeach the witness called by the interrogator were well taken.

▇ These authorities hold a party, including the State, does vouch for the credibility of a witness offered by such party and cannot impeach such witness, and, if that is the only witness on the subject, is bound thereby because it is the only theory of the case advanced. But as pointed out in State v. French, supra, such party may offer other evidence to show other facts of the case and it is then a question for the jury to decide which to believe.

▇▇ IV. Defendant has a brief point in his brief and argument on the required corroboration of an accomplice. Where as here the conviction could have been sustained without the testimony of the accomplice no such question arises. That the evidence to corroborate the testimony of an accomplice must be independent of his testimony and tend to show defendant participated in the crime, see State v. Fletcher, 246 Iowa 452, 68 N.W.2d 99.—Affirmed.

All JUSTICES concur except SNELL, J., who takes no part.