Cheshire
No. 86-017

## THE STATE OF NEW HAMPSHIRE

### v.

### JOSEPH MACDONALD

December 30, 1986

14

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. In this appeal from his conviction by a jury in Superior Court (*Hollman*, J.) of armed robbery, RSA 636:1, III(b), and possession of burglary tools, RSA 635:1, V, the defendant, Joseph MacDonald, raises two issues for our review. The questions presented are: (1) whether the evidence was sufficient to establish that the defendant possessed burglary tools with the intent to use or employ the tools or allow them to be used or employed for a burglarious purpose; and (2) whether exigent circumstances justified a limited warrantless search of the defendant's motel room. We affirm.

This case arises from an armed robbery on April 11, 1985, at the Valley Green Motel in Keene. At approximately 8:00 p.m., a man entered the motel office and registered under the name of John Raymond. The owners of the motel, Steven and Ann DeHaan, were the only individuals in the office when the man registered. He was assigned to room 67. On the registration card, he gave a Rhode Island address and indicated that he was driving a Chevrolet with Rhode Island license plate number 02123.

Approximately one hour later the same man, later identified as the defendant, returned to the motel office, displayed a gun, and told Mrs. DeHaan to go to the file cabinet and get the money out. When Mrs. DeHaan responded that no money was in the cabinet, the defendant informed her that he had seen her put some there earlier. The defendant then instructed Mrs. DeHaan to give him the paper money from the cash register. After taking the money, the defendant ordered the DeHaans into the back room, where they immediately pressed the alarm button.

The police arrived within minutes and were provided "very specific" information from the DeHaans relating to the robbery and its perpetrator. At this time, Mrs. DeHaan told the officers that the perpetrator was registered in room 67. The DeHaans also showed Officer Sargent the registration card for room 67 filled out in the name of John Raymond. Upon examination of the registration card, Officer Sargent noticed that the license plate number did not appear to be legitimate because such numbers do not start with "0."

After obtaining the above information from the DeHaans, Officers Sargent and Riddle, accompanied by Mr. DeHaan, went to room 67. Officer Sargent observed a car with Massachusetts plates directly in front of room 67 and no other cars in the area. Upon arriving at room 67, Officer Sargent knocked on the door. A man identifying himself as David Pasquarelli answered. When asked why he registered as John Raymond, Pasquarelli responded that he, or his company, got a tax break. Mr. DeHaan informed Officer Sargent that Pasquarelli was not the perpetrator. Officer Sargent thereupon asked Pasquarelli if anyone else was in the room, and he responded in the negative.

As the police officers were about to leave room 67, they were distracted by a car in a nearby shopping center which was squealing its tires and speeding off. The officers chased the vehicle, suspecting that it may have been the perpetrator making an attempted getaway. The car was stopped, and the driver brought to the motel office where Mrs. DeHaan informed the police that he was not the man who had robbed the motel.

After releasing the driver, Officers Sargent and Cunningham spoke with Mrs. DeHaan in the motel office. Mrs. DeHaan reiterated her belief that the man who was registered in room 67 was the same man who robbed the motel. She further told the police that if the person who answered the door to room 67 was not the robber, then more than one person had to be in room 67.

The officers then returned to the room and knocked on the door. The man who had earlier identified himself as Pasquarelli answered the door again. Officer Sargent asked Pasquarelli if he and Officer Cunningham could come in and speak with him. Pasquarelli allowed the officers to enter the room. The room was dark, illuminated only by the light from the television set. Officer Sargent asked Pasquarelli for identification, whereupon he produced a driver's license. When asked for the second time why he had registered under the name of John Raymond, Pasquarelli answered, "[W]e use the name of Mr. Raymond for business purposes or tax purposes." (Emphasis added.)

Becoming concerned for his own safety and that of Officer Sargent in the dark room after Pasquarelli indicated more than one person used the name John Raymond, Officer Cunningham turned on a light on a table and a light switch in the hallway. At the end of the hallway, Cunningham saw a door open approximately four inches. Cunningham testified that he felt uncomfortable that the door was only partially open. He walked to the door and pushed against it. The door opened about two-thirds of the way, stopped, and swung back. After he pushed the door a second time with the

same result, Cunningham concluded that something or someone was behind the door. Cunningham thereupon drew his revolver, looked behind the door, and pulled the defendant from behind. He recognized the defendant as matching the description of the perpetrator given to him by Mrs. DeHaan. Shortly after the defendant was taken into custody, he was identified by Mr. DeHaan as the man who had robbed the motel office.

The defendant was then taken to the police station for processing, and room 67 was secured while the police applied for a warrant to search the room and the Ford LTD parked in front of the room. Pursuant to the search warrant, the police searched room 67 and found the following: a screwdriver and paper money band, a loaded .357 magnum revolver, and a zippered bag containing a "Stanley" pry bar, a slaphammer, a small sledgehammer, a heavy-duty chisel, a pair of pliers, an awl, and a wire snipper.

Thereafter, the defendant was charged with armed robbery, RSA 636:1, III(b), and possession of burglary tools, RSA 635:1, V. Prior to trial, the defendant moved to suppress all evidence flowing from his allegedly illegal arrest and evidence seized pursuant to two searches of room 67. The superior court denied these motions. At the close of the State's case, the defendant moved to dismiss the information charging possession of burglary tools. *Inter alia,* the defendant argued that the State failed to present sufficient evidence that he possessed the tools with the intent to commit a burglary or any other crime. This motion was also denied. The defendant was convicted of armed robbery and possession of burglary tools and now appeals.

On appeal, the defendant contends that the trial court erred: (1) in denying his motion to dismiss the information charging possession of burglary tools; and (2) in denying his motion to suppress evidence obtained as a result of a warrantless search of his motel room. We will first address the defendant's argument that the State failed to produce sufficient evidence that he intended to use or employ the tools or allow them to be used or employed for a burglarious purpose.

RSA 635:1, V provides in pertinent part that:

"A person is guilty of a misdemeanor if he . . . knowingly has in his possession, an engine, machine, tool, or implement adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe, or other depository, in order to steal therefrom money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for such purpose."

RSA 635:1, V. The information charging the defendant with possession of burglary tools specifically tracked the language of the statute but omitted the "or to commit any other crime" language. The defendant does not challenge the sufficiency of the evidence presented by the State establishing: (1) that he knowingly possessed the tools; and (2) that he knew such tools were adapted and designed for "cutting through, forcing or breaking open a building, room, vault, safe or other depository, in order to steal therefrom money or other property." Instead, the defendant focuses his argument on the third mental state required by the statute, the "intent to use or employ or allow the same to be used or employed for such purpose." Specifically, the defendant contends that the evidence was insufficient to prove that the defendant possessed the tools with the intent to use them to commit burglary.

 In order to establish the intent element, the statute does not require that the accused possess the tools with the intent to commit a *particular* burglary. RSA 635:1, V; *see, e.g., State v. Conaway*, 319 N.W.2d 35, 41 (Minn. 1982); *Commonwealth v. Jones*, 355 Mass. 170, 177, 243 N.E.2d 172, 176 (1969); *Randall v. State*, 239 Ark. 312, 315, 389 S.W.2d 229, 231 (1965); *State v. Hobbs*, 252 Iowa 432, 435–36, 107 N.W.2d 238, 240 (1961). Also, the State need not link the defendant to any past or future burglary. *State v. Lake*, 686 S.W.2d 19, 21 (Mo. App. 1984); *Conaway supra*. The intent that must be established is a general intent to use the tools for a burglarious purpose, whenever and wherever the opportunity might present itself. *State v. Gilmore*, 665 S.W.2d 25, 30 (Mo. App. 1984); *State v. Brocato*, 222 Kan. 201, 204, 563 P.2d 470, 473 (1977); *Commonwealth v. Tivnon & another*, 74 Mass. (8 Gray) 375, 380 (1857).

 General burglarious intent may be inferred from the circumstances accompanying the possession and from the character of the objects. *Conaway supra; Brocato supra; People v. Esposito*, 18 Ill.2d 104, 107, 163 N.E.2d 487, 489 (1959). Intent may not be presumed from possession alone. *Cf. State v. Hobbs*, 252 Iowa 432, 434, 107 N.W.2d 238, 239 (1961) (Section 708.7, Code of Iowa 1958 specifically provides that possession is presumptive evidence of intent to commit burglary). In addition, circumstances must exist from which the jury could draw a legitimate inference that the defendant had the requisite intent. *Esposito supra*.

 After a thorough review of the record, we are convinced that the State produced more than sufficient evidence from which one could reasonably infer that the defendant possessed the tools with burglarious intent. First, burglarious intent can be inferred from

the number and combination of tools found in the defendant's possession. *Esposito supra; State v. Furlong*, 216 Iowa 428, 432, 249 N.W. 132, 134 (1933). Testimony at trial established that each of the many instruments found in defendant's possession was adapted for breaking open depositories. In toto, the presence of the combination of tools and the loaded .357 magnum revolver lends credence to the State's position that the defendant intended to use the tools to commit a crime.

 Second, intent to commit a burglary can be inferred from the circumstances under which the tools were found. *Brocato*, 222 Kan. at 204, 563 P.2d at 473. The police found the defendant in possession of the tools while conducting a search of the defendant's motel room following his arrest. Shortly before finding the tools, the police had arrested the defendant for robbing the motel office at gunpoint. Based on the above analysis, we hold that the evidence was sufficient to justify a finding of intent necessary to support the defendant's conviction. Thus, the trial court did not err in denying the defendant's motion to dismiss the information charging possession of burglary tools.

We next consider the defendant's argument that the trial court improperly determined that exigent circumstances justified the officer's limited warrantless search of the defendant's motel room. In an order denying the defendant's motion to suppress, the trial court determined that Officers Sargent and Cunningham made a consensual entry into the motel room, and that once inside the room, "exigent circumstances justified the limited search of the alcove and bathroom."

On appeal, the defendant first argues that the determination as to whether an exigency exists must be made at the point in time when the police officers arrive at the motel room door, not once they gain entrance into the room, as suggested by the trial judge. The defendant further argues that the police created the apparent exigency by entering the motel room, and thus cannot rely upon it to justify the warrantless search and arrest. Finally, the defendant contends that even based upon the circumstances after the police entered the motel room, no exigency in fact existed. We hold that the trial court properly determined that the police had consent to enter the motel room, and once inside, exigent circumstances developed justifying the officer's limited search of the bathroom to find the perpetrator.

We begin by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in

our analysis. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). There-after, we need address federal constitutional issues only insofar as federal law would provide greater protection. *State v. Ball, supra* at 232, 471 A.2d at 351.

 "A warrantless search is *per se* unreasonable and inval-id, unless it comes within one of a few recognized exceptions." *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980) (citing *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). *See also State v. Thorp*, 116 N.H. 303, 308, 358 A.2d 655, 660 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)); U.S. CONST. amend. IV; N.H. CONST. pt. I, art. 19. One such exception exists where the officers have consent to enter or search the premises. *Wren v. United States*, 352 F.2d 617, 618 (10th Cir. 1965), *cert. denied*, 384 U.S. 944 (1966). Another well-recognized exception exists where exigent circumstances make it impracticable to obtain a warrant. *United States v. Campbell*, 581 F.2d 22, 25 (2d Cir. 1978); *Theodosopoulos, supra* at 580, 409 A.2d at 1138–39.

In the present case, consent given by Mr. Pasquarelli allowing the police to enter room 67 was unquestionably freely and voluntarily given. The defendant does not argue that the police lacked consent to enter or that the consent was not freely and voluntarily given. His concern is that consent to enter should not be deemed to carry with it the implicit authority to search the premises. We acknowledge this concern and agree with the defendant in this regard. This con-cern, however, is not pertinent in the present case because an alter-native ground exists justifying the limited search inside the room.

 The trial court found that exigent circumstances devel-oped once the officers were in the room to justify a search to locate the perpetrator. Generally, exigent circumstances refer "to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which prob-able cause exists, unless they act swiftly and, without seeking prior judicial authorization." *Campbell supra.* Exigent circumstances also exist where there is "a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety." *Theodosopoulos*, 119 N.H. at 580, 409 A.2d at 1138–39 (cit-ing *Mincey v. Arizona*, 437 U.S. at 392).

 "The constitutionality of a given search does not turn on this court's after-the-fact evaluation of whether, as a tactical matter, the police could have deployed their forces differently in response to

a confusing emergency situation." *Theodosopoulos, supra* at 582, 409 A.2d at 1140 (citing *United States v. Weinrich,* 586 F.2d at 494 (1978)). Whether exigent circumstances exist is largely a question of fact to be determined by the trial court which we will not disturb unless clearly erroneous. *United States v. Brock,* 667 F.2d 1311, 1318 (9th Cir. 1982), *cert. denied,* 460 U.S. 1022 (1983); *United States v. Jones,* 635 F.2d 1357, 1360 (8th Cir. 1980). Furthermore, "[w]hether a situation is sufficiently urgent to permit a warrantless search depends on the totality of the circumstances." *Theodosopoulos, supra* at 580, 409 A.2d at 1139. Thus, in reaching our determination, we take into account "the overall reasonableness of the behavior of the officers and police in this case." *Campbell,* 581 F.2d at 27.

After a thorough review of the record, we hold that the exigencies of the situation, once the police were inside the motel room, made their course of action imperative. *Warden v. Hayden,* 387 U.S. 294, 298 (1967); *McDonald v. United States,* 335 U.S. 451, 456 (1948). Although in a situation involving an unconsented to warrantless entry, the existence of exigent circumstances must be analyzed "as of the time of entry," *Campbell, supra* at 26; *Morse,* 125 N.H. at 407, 480 A.2d at 187, in the present case, the warrantless entry into the motel room was justified by consent. Thus, that entry need not be justified by exigent circumstances as well. The circumstances existing prior to the entry may, however, have a bearing on a determination of exigency once inside.

In analyzing the situation which confronted the officers once they legitimately gained entrance into the motel room, we first point out that the officers were in pursuit of an armed robber who they had probable cause to believe was secreting himself in the motel room. The room was dark, but for the dim light from the television. Testimony at trial revealed that Mr. Pasquarelli appeared nervous when Officer Sargent asked him for some identification. Against this backdrop, Mr. Pasquarelli answered a question posed by Officer Sargent in the plural, *"we* use the name Mr. Raymond for business or tax purposes," and the bathroom door was slightly ajar.

Officer Cunningham testified at trial that on the basis of these facts, he reasonably feared for his safety. He believed that the armed perpetrator may have been hiding in the bathroom. He expounded that he had reason to believe that he and his fellow officer were at risk of serious bodily harm. In an attempt to protect himself and Officer Sargent, Officer Cunningham performed a limited search of the bathroom. We note that the limited nature of the search lends credence to the position that the officer's search

was reasonable. The search was indeed a limited one. Once the defendant was apprehended and in custody, the policy obtained a warrant to search the motel room. Under the circumstances of this case, we cannot say that the trial court's finding was clearly erroneous.

Because federal law is no more advantageous to the defendant, as many of our foregoing citations indicate, we similarly find no basis for relief under the Constitution of the United States. *State v. Dukette*, 127 N.H. 540, 548, 506 A.2d 699, 706 (1986).

*Affirmed.*

All concurred.