Strafford
No. 88-050

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN GIGAS

December 30, 1988

*Stephen E. Merrill*, attorney general (*William H. Lyons*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant appeals from his conviction in the Superior Court (*Nadeau*, J.) for the sale of cocaine and for possession with intent to distribute cocaine under RSA 318-B:2, :26. He argues that the trial court erred in denying his motion to suppress evidence seized pursuant to a non-consensual warrantless entry and subsequent arrests at a co-defendant's residence, without finding exigent circumstances. Because exigent circumstances must be present to justify a non-consensual warrantless entry and arrest, and because the trial court did not address the question of exigent circumstances, we remand for the trial judge's consideration of that issue.

On April 17, 1987, in the course of an investigation by the New Hampshire Drug Task Force (DTF), undercover officers Corporal Neal Scott and Detective Tim Connifey met with Thad Lefebvre, a suspected drug dealer, at the Friendship Inn in Dover. The officers agreed to purchase one pound of cocaine from Lefebvre the next day. Later that afternoon, Lefebvre telephoned Connifey's beeper, whereupon the agent called the number indicated, confirmed the agreement, and arranged to consummate the sale at 1:30 p.m. on the eighteenth. Connifey had reached Lefebvre at a number listed for apartment 96, building 4, Partridge Green Apartments, in Rochester. On the morning of April 18, police placed Lefebvre under surveillance at his home on Eastern Avenue in Rochester and followed him to building 4, Partridge Green

Apartments, where he arrived about 12:40 p.m. Lefebvre left the complex three-quarters of an hour later and reached the Friendship Inn before 1:30 p.m. A police officer kept the Partridge Green building under surveillance after Lefebvre left.

Lefebvre met with the two undercover officers in the Friendship Inn while a Dover police detective conducted audio surveillance from the room next door. In exchange for $21,600, Lefebvre delivered a brown paper bag containing two plastic bags holding a white powdery substance which Scott weighed and field-tested, discerning the presence of cocaine. Detective Connifey kept watch for potential counter-surveillance by Lefebvre's associates throughout the transaction. Lefebvre was then arrested in the Friendship Inn parking lot in the presence of television reporters who had been informed by the police of the planned arrest.

Upon arriving at the Dover police station, Lefebvre asked to speak to a detective, waived his *Miranda* rights, and revealed that he had received the cocaine from the defendant at the Partridge Green residence of Charles Drew and Ronald English. Lefebvre related that although the defendant, Stephen Gigas, had been asleep when he had picked up the cocaine earlier on the eighteenth, their previous understanding required him to return with $19,000 of the $21,600 sale price. Lefebvre claimed that there was at least one more pound of cocaine in the apartment and said that if he did not return with the money soon, the defendant would get suspicious.

Acting upon Lefebvre's information, the director of the Dover operation ordered an officer at the Rochester Police Department, who was preparing a search warrant application for Lefebvre's residence, to secure a search warrant for the Partridge Green apartment as well. Three DTF agents and a uniformed policeman went to the Partridge Green apartment to prevent the occupants from leaving pending the issuance of the warrant. The officers arrived at building 4 at about 2:30 p.m. Although they found it locked, they entered by holding the door for a woman carrying groceries, and then knocked at apartment 96. When the door was opened, they entered and assembled Drew, English, Katy Moffett, and the defendant in the living room, where they conducted protective searches, advised the four occupants of their rights, and told them to sit quietly on the sofa. The defendant requested some clothing and the officers found an eighth of an ounce of cocaine when they conducted a protective search of the defendant's shirt. Following delivery of the warrant at about 6:45 p.m., the police systematically searched the apartment and discovered additional drug paraphernalia and cocaine.

The defendant was charged with the sale of cocaine and with possession with intent to distribute cocaine in violation of RSA 318-B:2, :26. He filed a motion to suppress evidence seized from inside the apartment, which the superior court denied, finding the entry and arrests lawful. The court did not, however, address the question of exigent circumstances. The defendant, along with co-defendant Charles Drew, was tried in November, 1987, and the defendant was convicted on both charges and sentenced to seven and one-half to fifteen years on the possession charge. Sentencing on the sale charge, originally scheduled for June, 1988, apparently has not yet taken place.

We have recognized that exigent circumstances may justify warrantless entries, arrests, and searches which would be otherwise unreasonable. *See, e.g., State v. MacDonald*, 129 N.H. 13, 20–21, 523 A.2d 35, 39–40 (1968); *State v. Jones*, 127 N.H. 515, 522, 503 A.2d 802, 807 (1985); *State v. Theodosopoulos*, 119 N.H. 573, 578–82, 409 A.2d 1134, 1137–40 (1979), *cert. denied*, 446 U.S. 983 (1980). In this case, the trial court did not address the issue of exigent circumstances, and we remand for such consideration. Accordingly, we do not consider the State's contention that, even if there were no exigent circumstances, admission of the evidence in question at trial was harmless error.

*Remanded.*

All concurred.