Rockingham
No. 96-124

### THE STATE OF NEW HAMPSHIRE

v.

### ANTONIO GRACA

March 23, 1998

*Steven M. Houran*, acting attorney general (*Richard J. Lehmann*, attorney, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant, Antonio Graca, appeals his conviction for attempted theft by unauthorized taking. *See* RSA 629:1 (1996); RSA 637:3 (1996). He argues that the Superior Court (*McHugh*, J.) erred in denying his motions to suppress statements made and evidence found at the scene of the incident. We affirm.

On June 8, 1995, at approximately 2:00 a.m., Officer Dateo of the Derry Police Department, while on routine patrol, observed the defendant and Fernando Torres walking in the parking lot of an apartment complex. The two men approached Officer Dateo's cruiser and the defendant initiated contact. The defendant, Torres, and Officer Dateo engaged in some brief conversation.

At the time of the encounter, Officer Dateo was aware of the New Hampshire loitering statute, RSA 644:6 (1996), under which he was allowed to request basic information from any individual appearing at a place and time "that warrant[s] alarm for the safety of persons or property." *Id.* The defendant's statements, and the initial unsatisfactory explanation of the pair's presence in the parking lot at such an hour, caused Officer Dateo concern. Officer Dateo asked the men to step in front of his cruiser so that he could exit his vehicle before continuing questioning. Out of concern for his safety, Officer Dateo asked if the men would submit to a pat-down search. They consented.

Unaware that any crime had been committed, Officer Dateo continued his questioning about the defendant's identity and reason for being in the parking lot. The defendant stated that they were there to see women they had met earlier. However, he was unable to provide either the names of the women or the apartment in which they were staying. When asked how he had arrived at the apartment complex, the defendant said that he had ridden in a blue car that he believed to be a Nissan. The defendant was unsure of the present location of the car.

Having noticed that the men's pants were damp about the ankles during his pat-down search, Officer Dateo questioned the defendant about the condition of his pants. The defendant said that he had come from a lower level of the complex, requiring him to climb a hill covered with wet grass.

While Officer Dateo was speaking to the defendant and Torres, Officer Santuccio arrived. About this time, a police dispatch operator informed the officers that two males had been seen in the area tampering with a motorcycle. Officer Dateo concluded that the description of the two males matched the appearance of Torres and the defendant. At this time, Kevin LaBelle, a resident of the apartment complex, arrived. LaBelle identified the defendant and his companion as the two men he had seen walking away from his motorcycle.

Officer Santuccio testified that Torres told him that the pair had arrived in a blue Nissan by themselves. Leaving the upper lot to check the motorcycle for damage, Officer Santuccio spotted a blue Nissan. Upon closer examination, he saw an individual lying down in the back seat. Simultaneously, he was informed over his radio that Torres had recently been arrested for armed robbery in Massachusetts. Concerned by this information and the presence of an unexpected third person, Officer Santuccio drew his gun and ordered the individual out of the car. The individual was slow to comply but eventually exited the car. At this time, Officer Santuccio noticed that the vehicle's trunk was ajar. Fearing the presence of another unexpected individual, Officer Santuccio lifted the trunk as a protective measure. In plain view, he observed a dent puller with the motorcycle's ignition lock still on it.

On LaBelle's identification, the defendant and Torres were arrested and charged with attempted theft by unauthorized taking. Prior to trial, the defendant moved to suppress both the evidence found in the trunk and his statements made after Officer Dateo exited his cruiser. The trial court denied these motions and the defendant was subsequently convicted. He now appeals the denial of his motions to suppress.

*I. Motion to Suppress Evidence in Trunk*

The defendant first argues that the trial court erred in denying his motion to suppress evidence found in the trunk based on part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. We consider the defendant's claims, first, under our State Constitution, *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983), using federal case

law only to assist our analysis. *See Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983); *State v. Smith*, 141 N.H. 271, 274, 681 A.2d 1215, 1217 (1996). The Federal Constitution offers no greater protection in this context. *Smith*, 141 N.H. at 275, 681 A.2d at 1218.

Part I, article 19 provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." "A warrantless search is *per se* unreasonable and invalid unless it comes within one of a few recognized exceptions." *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980). "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." *State v. Sterndale*, 139 N.H. 445, 447, 656 A.2d 409, 410 (1995).

One such exception exists for exigent circumstances that make it impracticable to obtain a warrant. *State v. MacDonald*, 129 N.H. 13, 20, 523 A.2d 35, 39 (1986). "[W]hether exigent circumstances exist is *largely* a question of fact to be determined by the trial court which we will not disturb unless clearly erroneous." *Id.* at 21, 523 A.2d at 39 (emphasis added) (implying that determinations of whether exigent circumstances exist also involve questions of law). We have held that "exigent circumstances refer to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search, or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." *Id.* at 20, 523 A.2d at 39 (quotation omitted). Exigent circumstances also exist where there is a compelling need for immediate official action and a risk that the delay inherent in obtaining a warrant will present a substantial threat of imminent danger to life or public safety. *Id.* This appeal concerns the latter exigent circumstances situation.

The State argues, and the trial court found, that Officer Santuccio had a legitimate concern for his safety when he observed the vehicle's trunk ajar. He was aware that Torres had recently been arrested for armed robbery. Furthermore, Officer Santuccio had just been surprised by an unexpected person in the car and thought yet another subject awaited him in the trunk. We agree with the trial court that this concern constituted exigent circumstances.

We find instructive the case law developed in connection with concern for officer safety during residential arrests and searches. *See Maryland v. Buie*, 494 U.S. 325, 334 (1990); *United States v. Daoust*, 916 F.2d 757, 759 (1st Cir. 1990); *Smith*, 141 N.H. at 277, 681 A.2d at 1219. In *Buie*, the United States Supreme Court held that

[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Buie*, 494 U.S. at 337. Such a sweep should be limited to a "cursory inspection of those spaces where a person may be found. The sweep [may] last[] no longer than is necessary to dispel the reasonable suspicion of danger . . . ." *Id.* at 335-36. *See generally* 3 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 6.4(c), at 323-35 (3d ed. 1996). In *Smith*, we adopted the *Buie* holding as a "legitimate extension[] of our own search and seizure law under part I, article 19 of the New Hampshire Constitution." *Smith*, 141 N.H. at 276, 681 A.2d at 1219; *see also Daoust*, 916 F.2d at 759 (applying *Buie* in the First Circuit).

■ In the instant case, Officer Santuccio, while on his way to examine LaBelle's motorcycle, observed a blue Nissan. He understood that vehicle to be the car in which the defendant and Torres arrived. Although Torres had stated that only he and the defendant were involved, Officer Santuccio observed a third individual lying down in the back seat. Officer Santuccio then received information that Torres had been arrested the week before for armed robbery. After finally getting the third individual to exit the vehicle, Officer Santuccio noticed the car's trunk was ajar. Fearing the presence of a fourth, possibly armed individual, he tugged on the trunk. He testified that tugging is standard procedure to make sure the trunk cover is not being held down from the inside.

Viewing the totality of the circumstances, *see MacDonald*, 129 N.H. at 21, 523 A.2d at 39, we cannot distinguish Officer Santuccio's situation from our prior cases permitting a limited search by officers fearing for their safety and the potential for ambush. *See id.* at 21-22, 523 A.2d at 40; *Smith*, 141 N.H. at 275-76, 681 A.2d at 1219. "Our constitution should not be interpreted to deny police officers the right to protect themselves from harm." *Smith*, 141 N.H. at 276, 681 A.2d at 1219; *see* 3 LAFAVE, *supra* § 6.4(c), at 324. Consequently, the search was valid. Because the search was valid, the dent puller and ignition lock Officer Santuccio observed are admissible under the plain view exception to the warrant requirement. *See Smith*, 141 N.H. at 277, 681 A.2d at 1219. We therefore affirm the trial court's order denying the defendant's motion to suppress this evidence.

*II. Miranda Warnings*

The defendant next argues that the trial court erred in denying his motion to suppress statements made without *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant concedes that his initial, volunteered statements present no constitutional problem. He argues, however, that after he stepped in front of the police cruiser and Officer Dateo exited the vehicle, he was in custody. He asserts that his subsequent statements, therefore, are inadmissible due to the fact that he received no *Miranda* warnings at that time.

For *Miranda* warnings to apply, we require "a custodial interrogation" by the police. *State v. Dellorfano*, 128 N.H. 628, 633, 517 A.2d 1163, 1166 (1986). "These safeguards [*Miranda* warnings] were deemed necessary to counteract the *combined* effects of interrogation and custody . . . ." 1 W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 6.6, at 489 (1984) (emphasis added). Thus, for *Miranda* to apply two elements must exist: custody and interrogation.

"Custody determinations for *Miranda* purposes are *essentially* factual, and we will uphold the superior court's rulings unless contrary to the manifest weight of the evidence or the result of an error of law." *State v. Carpentier*, 132 N.H. 123, 126, 562 A.2d 181, 183 (1989) (emphasis added) (implying that custody determinations also involve questions of law). "Custody entitling a person to *Miranda* protections during interrogation requires formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* (quotation omitted). "In the absence of formal arrest, the trial court must determine whether a suspect's freedom of movement was sufficiently curtailed by considering how a reasonable man in the suspect's position would have understood his situation." *Id.* at 126-27, 562 A.2d at 183 (quotation omitted). "In reaching its decision, the trial court should consider, among other factors, the suspect's familiarity with his surroundings, the number of officers present, the degree to which the suspect was physically restrained, and the interview's duration and character." *Id.*

■ ■ A review of the record reveals ample support for the superior court's ruling that the defendant was not in custody. Officer Dateo merely asked the defendant to stand in front of his car. Officer Dateo testified, and the superior court found, that his questioning throughout the incident was of a purely general nature. It was allowed under the New Hampshire loitering statute, RSA 644:6. The defendant attempts to distinguish his initial remarks given volun-

tarily while Officer Dateo was in his vehicle from those made once Officer Dateo exited his cruiser when the men were in front of the car. By exiting his patrol car, Officer Dateo better ensured his safety. Officer Dateo's actions would not suggest a custodial situation to a reasonable person. *See Carpentier,* 132 N.H. at 126-27, 562 A.2d at 183.

■■ Furthermore, the pat-down search to which the defendant consented constituted a reasonable measure utilized to better ensure an officer's individual safety. The brief, voluntary pat-down search did not constitute "custody" for *Miranda* purposes. *See State v. Johnson,* 140 N.H. 573, 578, 669 A.2d 222, 226 (1995) (reasoning that, although seized, defendant not necessarily "in custody" for *Miranda* purposes); *cf. Berkemer v. McCarty,* 468 U.S. 420, 439, 441-42 (1984) (reasoning that routine traffic stops, like *Terry* stops, do not compel *Miranda* warnings because suspect not in custody, although seized). Without custody, either by arrest or equivalent restraint of freedom, the protections of *Miranda* do not apply. We agree with the superior court's finding that the defendant was not in custody at the time in question. The police were not required to administer *Miranda* warnings at that time. Therefore, the trial court properly denied the defendant's motion to suppress the statements made at that time.

Because some of the issues raised in the defendant's notice of appeal do not appear in his brief, we treat them as waived. *See State v. Penn,* 127 N.H. 351, 351, 499 A.2d 1014, 1015 (1985); *see also State v. Perkins,* 121 N.H. 713, 715, 435 A.2d 504, 505 (1981); *Davis v. State,* 94 N.H. 321, 323, 52 A.2d 793, 796 (1947).

We have reviewed the record with respect to the defendant's remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.