## IN THE COURT OF APPEALS OF IOWA

No. 14-0552
Filed May 6, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA TIMOTHY WILSON,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham III,

Judge.


        A defendant appeals his conviction for aiding and abetting an attempted

burglary.  **REVERSED AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Linda J. Hines,

Assistant Attorneys General, Michael J. Walton, County Attorney, and Dion D.

Trowers, Assistant County Attorney, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Joshua Wilson contends the State failed to prove beyond a reasonable doubt that he aided and abetted his friend Christopher Lyman in an attempted burglary. Even viewing the evidence in the light most favorable to the State, we find proof of little more than Wilson's presence at the scene of the thwarted break-in. Because the State did not offer substantial evidence to prove Wilson's specific intent to commit a theft or his active participation in or encouragement of his friend's alleged criminal act, we reverse the conviction and remand for dismissal.[1]

## I.       Background Facts and Proceedings

The jury could have found the following facts from the evidence presented at trial. Davenport resident Troy Gutknecht went to bed around midnight on October 21, 2013, but heard suspicious noises at his front door. He "got up to investigate" and went to his kitchen where he had a direct view of the front door. Gutknecht recalled: "I saw the handle wiggling and I saw a figure in the window behind the blinds." Gutknecht, who was in the nude, "charged the front door and threw the blind open and started screaming at the person in the window." Gutknecht could see the man inside the storm door "working on the lock." Gutknecht yelled: "What the hell are you doing?"[2]

---

[1] Because we reverse on the sufficiency claim, we do not need to consider Wilson's remaining issues.

[2] Gutknecht said someone looking in the living room window could have seen his wife's computer and iPad mini sitting on the floor next to the couch and his wallet resting on a table.

The would-be intruder, later identified as Christopher Lyman, said he was looking for his friend Brandon's house. Gutknecht yelled back: "You don't have a friend here and I'm calling the cops." Gutknecht also recalled Lyman turning to someone on his left, out of Gutknecht's line of sight, and saying: "Look at this MF'er tripping on me." Lyman then took off, heading westbound down High Street.

Meanwhile, Gutknecht's wife was on the phone with the 911 operator. Gutknecht relayed the direction of Lyman's departure to the police. Within about five minutes, police responded to the dispatch and apprehended two suspects in the vicinity of Gutknecht's house. Gutknecht identified Lyman as the person at his door. Davenport police searched Lyman and found two flashlights, a box cutter, and black gloves.

The police also identified a second suspect about fifty to seventy five yards away from where they stopped Lyman. According to Officer Jacob Pries, the second suspect, Joshua Wilson, "came walking out" of an alley. Pries testified Wilson "was breathing pretty heavily, he was sweating profusely. He had the appearance of just having sprinted somewhere or for a fashion of time." But Pries said he did not know if Wilson was running from the police and also stated the officers had not given Wilson a command to stop. Wilson cooperated with the officers.

Police searched Wilson and found a small LED flashlight, a pair of orange-handled children's safety scissors, and a pair of mismatched gloves.[3] Wilson later admitted to a detective that he had been standing on the street in front of the Gutknecht residence that night and he was Lyman's friend. He told the detective he ran because "he was nervous when police were around."

The State charged Wilson and Lyman with attempted burglary in the second degree and possession of burglary tools in a joint trial information filed on October 31, 2013. Their cases were tried together before a jury on January 30, 2014. After the State's case-in-chief, defense counsel moved for judgment of acquittal on both counts. The court granted the motion on the second count, finding no evidence had been presented that the common items possessed by the defendants "could be considered burglary tools." The court denied the motion on the attempted burglary count, and the jury returned verdicts finding both defendants guilty of attempted burglary in the second degree.

Wilson received an indeterminate five-year prison term for the class "D" felony conviction. This appeal involves Wilson's challenge to his conviction.

## II. Standard of Review

We review a challenge to the sufficiency of the evidence for legal error. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In deciding if the evidence supports the guilty verdict, we view the record in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *Id.* We consider all the evidence presented, not just inculpatory

---

[3] The record showed the temperature that night was about forty degrees and the officers were also wearing gloves.

evidence. *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002). We will uphold the jury's verdict if it is supported by substantial evidence. *Id.* Evidence is considered substantial if it can convince a rational jury the defendant is guilty beyond a reasonable doubt. *Sanford*, 814 N.W.2d at 615.

### III.   Substantial Evidence Analysis

The jury convicted Wilson of aiding and abetting attempted burglary in the second degree. Attempted burglary is defined as follows:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license, or privilege to do so, attempts to enter an occupied structure, the occupied structure not being open to the public . . . commits attempted burglary.

Iowa Code § 713.2 (2013). A defendant commits attempted burglary in the second degree if one or more persons are present when the defendant is attempting to enter an occupied structure with the requisite specific intent, but the defendant does not possess a dangerous weapon or explosive. Iowa Code § 713.6(1)(b).

In this case, the jury received the following marshalling instruction:

> 1. On or about the 21st day of October, 2013, Defendant Joshua Timothy Wilson and Defendant Christopher Michael Lyman attempted to enter or break into 1316 West High Street, Davenport, Iowa.
> 2. 1316 West High Street was an occupied structure as defined in Instruction 16.
> 3. 1316 West High Street was not open to the public.
> 4. The Defendant Joshua Timothy Wilson and Defendant Christopher Michael Lyman did not have permission or authority to enter or break into 1316 West High Street.
> 5. The Defendant Joshua Timothy Wilson and Defendant Christopher Michael Lyman did so with the specific intent to commit a theft.
> 6. A person was present in the occupied structure.

The State tried Wilson as an aider and abetter. The prosecutor told the jury in closing argument: "Mr. Wilson is also charged under this aiding and abetting theme." The prosecutor emphasized Wilson acknowledged being at the scene; was carrying gloves, a flashlight, and scissors; and ran away because he was nervous: "If you're just walking around with a random flashlight doing nothing, why were you running and why are you telling police that?"

An aider and abetter must "be associated in some way with the venture, participates in it as something he or she wishes to bring about, and seeks to make it succeed by his or her actions." *State v. Hustead*, 538 N.W.2d 867, 870 (Iowa Ct. App. 1995). To uphold a conviction on the theory of aiding and abetting, the record must contain substantial evidence the accused "assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission." *State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). The State must show Wilson knew of the crime at the time of or before its commission. *See id.* Neither knowledge of the crime nor proximity to the crime scene, standing alone, are enough to prove aiding and abetting. *Id.* But the factfinder may consider the factors of presence, companionship with the principal, and conduct before and after the offense to infer the accomplice's participation in the crime. *Id.* And when, as here, specific intent is an element of the crime charged, a defendant may be guilty under a theory of aiding and abetting if he participates with either the requisite intent, or with knowledge the principal possesses the required intent. *Id.*

Wilson challenges the State's proof that he and Lyman had the specific intent to commit a theft. And even if the evidence could be considered sufficient as to Lyman, Wilson contends the State failed to show he had the specific intent to steal from the Gutknechts or knew of Lyman's intent. Wilson argues possessing gloves on a cold October night and carrying a flashlight and children's scissors "did not sufficiently establish intent or knowledge of another's intent" to commit a theft.

Intent can seldom be proved by direct evidence. *State v. Furlong*, 249 N.W. 132, 134 (Iowa 1933). Proof of intent usually arises from circumstantial evidence and inferences reasonably drawn from the circumstances. *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985). When police discover the accused possesses tools, the jury may "start with the inference that the possession of the tools had some purpose, either lawful or unlawful. Whether the purpose was a sinister one would naturally be reflected by the circumstances surrounding such possession." *Furlong*, 294 N.W. at 134*.*

In Wilson's case, contrary to the prosecutor's argument, we do not believe the items he was carrying can be considered burglary tools. In granting judgment of acquittal on the possession-of-burglary-tools count, the district court found as a matter of law the record did not support characterizing the flashlight, children's safety scissors, and mismatched gloves as burglary tools. As Wilson argues, having gloves on a cold October night in Iowa is not unusual. Likewise, many people carry flashlights when walking at night without a sinister purpose.

As for the rounded-tip safety scissors, no State's witness testified how they could have been used as a tool in committing a burglary.

With no reasonable inferences to be drawn from the items seized from Wilson, all that remains of the State's case is Wilson's presence at the scene, his friendship with Lyman, and his nervousness around police. Our courts have long held a defendant's "mere presence" at the scene of the crime is insufficient to prove aiding and abetting. *See State v. Wolf*, 84 N.W. 536, 538 (Iowa 1900) ("It has never been held, so far as we are advised, that mere presence at the scene of crime constitutes aiding and abetting. Indeed, it is elementary that such is not the case. Nor is it sufficient, in addition thereto, that the person present mentally approves what is done."); *accord State v. Daves*, 144 N.W.2d 879, 881 (Iowa 1966). And on the issue of presence, Wilson only acknowledged to law enforcement he was on the sidewalk, some twenty feet away from Gutknecht's house. Gutknecht recalled Lyman talking to someone out of the victim's line of sight, but the record does not show to whom Lyman was speaking, how close that person was to the door, or if that person was actively participating in an attempt to break into the house.

Wilson's companionship with Lyman also does not prove Wilson had the specific intent to commit a theft or knew of Lyman's intent. The only evidence of the codefendants' interaction was a single statement by the police detective that Wilson admitted they were friends. Friendship aside, the State presented no evidence Wilson shared a common purpose with Lyman to commit a burglary. *See Hustead*, 538 N.W.2d at 870.

Finally, Wilson's alleged flight from the scene is not a reliable indicator of his guilt. *See State v. Marsh*, 392 N.W.2d 132, 134 n.1 (Iowa 1986) (quoting *Wong Sun v. United States*, 371 U.S. 471 483 n.10 (1963) ("[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime.")). Officer Pries did not actually see Wilson running from police but instead saw him walking toward the investigators, albeit out of breath. From that point on, Wilson cooperated with the investigation and explained he initially took off because he was nervous in the presence of police. Wilson's conduct after Gutknecht yelled at Lyman to get away from his door was not sufficient to show Wilson had the requisite intent for attempted burglary. *See Alberty v. United States*, 162 U.S. 499, 511 (1896) (observing citizens have all manner of reasons to prefer to avoid contact with police).

In this case, the State's evidence cast suspicion on Wilson's activities the night of October 21, 2013, but fell short of proving he actively participated in an attempt to break into the Gutknecht residence with the intent to commit a theft or that Wilson lent countenance to his friend's criminal actions. Because the State's evidence was insufficient to prove Wilson aided and abetted the commission of attempted burglary, the district court should have granted the motion for judgment of acquittal. Accordingly, we reverse Wilson's conviction and remand for dismissal.

**REVERSED AND REMANDED.**