Hillsborough
No. 87-177

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM COYMAN

THE STATE OF NEW HAMPSHIRE

v.

JACK MCCORMACK

August 10, 1988

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, assistant attorney general, on the brief, and *Peter G. Beeson*, attorney, orally), for the State.

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Steven M. Gordon* on the brief and orally), for the defendant William Coyman.

*William Brennan*, of Manchester, by brief for the defendant Jack McCormack.

JOHNSON, J. The Trial Court (*Pappagianis*, J.), based on a stipulation to facts and acknowledgement of rights by each defendant, found defendant Coyman guilty of theft by unauthorized taking and possession of cocaine, and defendant McCormack guilty of receiving stolen property and possession of cocaine. The defendants appeal their convictions on the ground that the trial court erred in denying their motions to suppress evidence seized pursuant to a warrantless, third-party consensual entry into premises they temporarily occupied, and a resultant plain view search and seizure. We affirm.

The issue for resolution is whether the owner of the single-family residence, where the search was conducted, possessed authority to consent to a warrantless entry by a police officer into the basement livingroom of her house which she shared with the defendant McCormack's girl friend, Stacey Ferguson, who was off the premises when the consensual entry occurred.

At approximately 1:10 a.m., on December 18, 1984, Officer Richard Gilman of the Manchester Police Department received a radio communication indicating that there were "two unwanted parties" at 105 Mitchell Street. Upon arriving at that address, Officer Gilman spoke with Lucie Bolduc, the owner of the house, who informed him that Coyman and McCormack had entered the house through the kitchen entrance by means of a key. The two men had ignored the requests made by Bolduc and by a male neighbor that they leave the house, whereupon Bolduc had called for police assistance. Although Ferguson had informed Bolduc earlier that McCormack would be coming to the house that evening to retrieve

Ferguson's car, Bolduc had not been informed that McCormack had a key to the house.

Having concluded his conversation with Bolduc, and with her permission and at her request, Officer Gilman, without revealing his identity or purpose, descended the staircase that led to the basement in order to ask the two men why they were in the basement. Upon reaching the bottom portion of the staircase, Gilman saw the two men sitting on a couch. On a small table that stood in front of the couch was a mirror that held a substance resembling cocaine. Also on the table were several piles of cash in various denominations and a small chest containing what appeared to be additional cocaine and a marijuana cigarette. Gilman seized the mirror and placed it out of reach of the defendants, then requested the assistance of back-up officers. After these officers arrived, Coyman and McCormack were arrested.

A subsequent search of the basement livingroom, pursuant to a search warrant, resulted in the seizure of cash, checks, bank bands and other valuables that linked Coyman and McCormack to a robbery that had occurred earlier that evening at the Ames Department Store in Milford. A post-arrest search of Coyman's person, conducted at the police station, resulted in the seizure of a substance that a laboratory test revealed to be .968 grams of cocaine.

Following their indictments, Coyman and McCormack each filed a motion to suppress the evidence seized as a result of the warrantless search conducted by Officer Gilman. On May 22 and 23, 1986, an evidentiary suppression hearing was held, during which the State and the defendants informed the court of their agreement that a decision granting the suppression motions would be dispositive of the case. On June 12, 1986, the trial court denied the motions to suppress.

On March 19, 1987, Coyman and McCormack each executed a stipulation to facts and acknowledgement of rights. Based upon the stipulations, and his ruling on the motions to suppress, the trial court found the defendants guilty and sentenced Coyman to not less than two years and not more than ten years at the New Hampshire State Prison for theft by unauthorized taking, and to not less than two years and not more than seven years for the possession of cocaine, the latter sentence to run concurrently with the former. The court sentenced McCormack to not less than two years and not more than ten years for receiving stolen property, and to not less than two years and not more than seven years for cocaine

possession, the latter sentence to run concurrently with the former. Both defendants appeal.

Coyman and McCormack argue that Lucie Bolduc's consent to the entry of the basement livingroom by Officer Gilman exceeded her authority as a landlord and was therefore unlawful under part I, article 19 of the New Hampshire Constitution. The State counters that the trial court had ample evidence to conclude that Bolduc had common authority over and joint access to the downstairs livingroom and that she therefore could lawfully consent to an entry of that livingroom. We agree with the State.

Two observations are necessary before we begin our analysis. The first is that our decision here is based solely on our State Constitution. The defendants have asserted no independent federal constitutional claim for our consideration. Their minimal references to fourth amendment search and seizure law can fairly be read only as analogous support for their State constitutional claim. Likewise, our references here to federal case law, and to State case law arguably decided on federal grounds, are only for purposes of guidance in reaching our decision.

The second observation is that even though the parties have characterized this case as one involving a consensual search, our view, as borne out by our analysis below, is that this case is more properly viewed as one involving a consensual entry followed by a so-called plain view search and seizure.

■■ "'A warrantless search is *per se* unreasonable and invalid unless it comes within one of a few recognized exceptions.'" *State v. MacDonald*, 129 N.H. 13, 20, 523 A.2d 35, 39 (1986) (quoting *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980)). "One such exception exists where the [officer has] consent *to enter* or search the premises." *State v. MacDonald supra* (citing *Wren v. United States*, 352 F.2d 617, 618 (10th Cir. 1965), *cert. denied*, 384 U.S. 944 (1966)) (emphasis added). In a third-party consensual entry, it must be demonstrated that the consenting party had authority to consent to the entry. *See United States v. Matlock*, 415 U.S. 164, 170 (1974).

Coyman and McCormack do not contend that Lucie Bolduc's consent to Officer Gilman's entry of the basement livingroom of her house was anything other than free, knowing and voluntary. *See State v. Pinder*, 126 N.H. 220, 223, 489 A.2d 653, 655 (1985). Therefore, the only issue in dispute is whether Bolduc had authority to consent to Gilman's entry of the basement livingroom.

■ We hold that Lucie Bolduc possessed actual authority to consent to the entry by Officer Gilman because there was sufficient evidence for the trial court's conclusion that Bolduc shared with Stacey Ferguson access to, and use of, the basement livingroom at 105 Mitchell Street, which made Bolduc a co-occupant authorized to consent to an entry of jointly controlled areas of the house without Ferguson's consent. The United States Supreme Court has stated that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock supra.*

■ We have stated that "[a]n entry upon the premises with the consent of one co-owner or occupant is lawful as against the other." *State v. Sorrell*, 120 N.H. 472, 475, 416 A.2d 1375, 1378 (1980) (citing *State v. McComb*, 111 N.H. 312, 282 A.2d 673 (1971)); *see also United States v. Matlock*, 415 U.S. at 170; *Frazier v. Cupp*, 394 U.S. 731, 740 (1969). We held in *State v. McComb supra*, a case in which the facts were very similar to those presented in this case, that one of two brothers who jointly occupied a house could invite police officers to enter that house in order to investigate the possession and use of controlled drugs by persons therein. We stated in *McComb* that "[t]he right of [the absent brother] to entertain law-breakers in the joint home was certainly no greater than the right of [the consenting brother] to cause law enforcement officers to investigate activities there." 111 N.H. at 313–14, 282 A.2d at 675.

The record in this case clearly indicates that Lucie Bolduc and Stacey Ferguson had a living arrangement akin to roommates rather than landlord and tenant. Ferguson entered the residence through the same front and side doorways that Bolduc used, rather than by means of a separate entrance leading directly to the downstairs livingroom and her downstairs bedroom. Once in the house, Ferguson entered her living area through a door that, unlike a door to a conventional apartment, was never locked. Instead of preparing meals on her own stove, using her own kitchenware, as an apartment dweller would be likely to do, Ferguson used Bolduc's kitchen and kitchen equipment to prepare meals, and also stored her food in Bolduc's kitchen. Ferguson also shared with Bolduc the one working bathroom in the house and, at least on occasion, Ferguson shared the upstairs livingroom for the purpose of viewing television or a movie. Bolduc maintained an extension of her telephone line in the basement livingroom and stored personal items in a storage area that was located in the unfinished portion of the basement next to the livingroom and was accessible only by

passing through the livingroom. There was testimony from Bolduc that she used the downstairs livingroom to entertain and watch television, but this was disputed by Ferguson. The trial court found that Bolduc and Ferguson "each had access to Lucie Bolduc's entire house, except for their bedrooms." In sum, all of the rooms in Lucie Bolduc's house, save the bedrooms, were open to shared use. Lucie Bolduc, then, was a co-occupant of 105 Mitchell Street and, as such, possessed actual authority to consent to an entry of the basement livingroom by Officer Gilman.

Because we find that Lucie Bolduc possessed actual authority to consent to the entry of the basement livingroom, we need not consider whether Officer Gilman conducted a sufficient inquiry into the circumstances surrounding the presence of Coyman and McCormack in that livingroom to have concluded that Lucie Bolduc possessed apparent authority to consent to the entry. The scope of Officer Gilman's inquiry into the nature of Bolduc's apparent authority is irrelevant in the face of our finding that Bolduc possessed actual authority to consent to the entry. Although it has never expressly adopted the apparent authority analysis, the United States Supreme Court has implied that an inquiry into whether a police officer reasonably believed that a third party had sufficient authority to consent to a search (or, in this case, entry) is unnecessary where the court has determined that the consenting party had actual authority so to agree. *See United States v. Matlock*, 415 U.S. at 177 n.14.

■■ Once it is determined that Bolduc had the authority to grant permission to (indeed, to request) Officer Gilman to enter the downstairs of her home, the next issue is whether Officer Gilman could properly seize the incriminating evidence which he observed and arrest the defendants. This court has ruled that incriminating evidence in plain view may be seized under both the State and National Constitutions. *State v. Cote*, 126 N.H. 514, 525, 493 A.2d 1170, 1178 (1985). Here, Officer Gilman was lawfully on the premises by virtue of the third-party consensual entry, and inadvertently perceived objects of apparent evidentiary significance. *Cote, supra* at 525–26, 493 A.2d at 1178. Hence, the seizure of the evidence and the arrest of the defendants was constitutionally permissible.

Coyman and McCormack finally argue that Officer Gilman conducted an unreasonable search and seizure in violation of their rights under part I, article 19 of the New Hampshire Constitution because he did not observe the "knock and announce" rule that we set forth in *State v. Jones*, 127 N.H. 515, 503 A.2d 802 (1985). In

*Jones,* we held that "New Hampshire police officers, before forcibly entering a dwelling, should knock, identify themselves and their purpose, and demand admittance." *Id.* at 518, 503 A.2d at 805.

██ We reject this contention. The defendant's argument fails because Officer Gilman did not violate the knock and announce rule, since that rule applies only when a police officer *forcibly* enters a *dwelling.* Gilman did not "forcibly" enter the residence at 105 Mitchell Street, as he was invited into the house by Lucie Bolduc. He also did not enter a "dwelling" when he descended the staircase and crossed the threshhold of the basement livingroom, because that livingroom was not a "residence," "abode," "habitation," or "apartment," which it would have to be in order to qualify as a dwelling. BLACK'S LAW DICTIONARY 454 (5th ed. 1979). Rather, the basement livingroom was a common area within Lucie Bolduc's house.

█ We conclude that Lucie Bolduc possessed actual authority to consent to the entry of the basement livingroom at 105 Mitchell Street by Officer Gilman and, therefore, that the warrantless search that Gilman conducted was reasonable and in accord with the plain view doctrine under part I, article 19 of the New Hampshire Constitution. We thus affirm the decision of the trial court denying the motions filed by defendants Coyman and McCormack to suppress the evidence seized as a result of that search.

*Affirmed.*

All concurred.