05-1284-cr
United States v. Carvajal

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

⸻

August Term, 2006

(Argued: July 12, 2007                    Decided: September 5, 2007)

Docket Nos. 05-1284-cr(L); 05-1514-cr(XAP)*

⸻

UNITED STATES OF AMERICA,

*Appellee*,

−v.−

STEVEN ACOSTA, LINDA HODGE, TODD BLUNT, ROBERT CARVAJAL,

*Defendants*,

JOSEPH CARVAJAL,

*Defendant-Appellant.*

⸻

Before:
　　　POOLER, B.D. PARKER, WESLEY, *Circuit Judges*.

Appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York (Hellerstein, *J.*) on March 9, 2005.

AFFIRMED.

⸻

*The government filed a notice of appeal, Docket No. 05-1514-cr(XAP), but ultimately elected not to pursue a cross-appeal.

JEREMIAH DONOVAN, Old Saybrook, CT, *for Defendant-Appellant.*

DANIEL L. STEIN, Assistant United States Attorney *on behalf of* Michael J. Garcia, United States Attorney for the Southern District of New York (Katherine Polk Failla, Assistant United States Attorney, *on the brief*), *for Appellee.*

WESLEY, *Circuit Judge*:

Joseph Carvajal argues his conviction should be overturned, claiming the evidence presented against him at trial was obtained in violation of the knock-and-announce rule under the Fourth Amendment and 18 U.S.C. § 3109. Before oral argument, but after Carvajal filed his brief, the Supreme Court held in *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), that although a police officer's failure to abide by the knock-and-announce rule may violate an individual's right to be free from unreasonable searches under the Fourth Amendment, the exclusionary rule does not apply to evidence discovered in the ensuing search. *Hudson* forecloses Carvajal's argument in favor of suppression under the Fourth Amendment, yet leaves us to decide whether the exclusionary rule applies to putative violations of § 3109. We hold that it does not and join the circuits that have considered the matter. *See United States v. Bruno*, 487 F.3d 304 (5th Cir. 2007); *United States v. Southerland*, 466 F.3d 1083 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 1361 (2007). Because an alleged violation of the knock-and-announce rule—both under the Fourth Amendment and § 3109— does not trigger the exclusionary rule, we affirm the judgment of conviction entered against Carvajal.

**I.**

Carvajal and his brother managed a currency counterfeiting scheme—the fruits of which they used to purchase crack cocaine—from an apartment complex located on 115th Street in New York City. The two brothers lived in one apartment; several of their associates slept in the other. Upon learning about the criminal activity from a confidential informant, the United States Secret Service obtained a warrant for Carvajal's arrest and search warrants for the two apartments. The search warrants authorized the Secret Service to confiscate any counterfeit currency, computers and printers used to create counterfeit currency, crack cocaine, and drug paraphernalia found in the apartments. An attached affidavit, authored by a member of the Counterfeiting Squad for the Secret Service, indicated that Carvajal kept three firearms in his apartment.

At six o'clock in the morning, twenty Secret Service agents simultaneously executed the search warrants and arrest warrant at the two apartments. Following their pre-dawn arrival at the apartment building, the agents split into two teams and dispersed to the sixth and tenth floors. The ten agents assigned to Carvajal's sixth-floor apartment huddled in the hallway around his door and prepared for entry. An attempt to slide a fiberoptic scope under the apartment door did not yield any information, prompting the supervising agent to radio the signal to execute the warrant. One agent pounded on the door to Carvajal's apartment and yelled "Police!" Receiving no response within five seconds, the agents brought out their battering ram, struck the door three times, and breached the entrance. As they fanned out inside the apartment, Carvajal's brother ran toward the agents holding a firearm. Two agents responded with gunshots to the brother's head and mid-section. An agent standing outside the apartment building, hearing the

gunshots, looked up and watched as a computer printer and handgun fell from the apartment window. The Secret Service collected the printer and handgun from the courtyard behind the apartment, as well as drug paraphernalia and printing supplies from within the apartment.

The government indicted Carvajal on ten counts arising out of his counterfeiting and crack cocaine scheme. Prior to trial, Carvajal sought to suppress the evidence obtained during the search, alleging the government obtained the evidence in violation of the Fourth Amendment and 18 U.S.C. § 3109. He did not dispute the fact that the agents knocked on his door and identified themselves as the police, but argued the unreasonableness of the agents' five-second pause. At the suppression hearing, the district court rendered an oral judgment denying Carvajal's motion:

> The simultaneous execution of the warrants on two neighboring apartments, the ease of communication by cell phones and other means, and the ability to destroy evidence, at least major parts of the evidence, by discarding them out the window in an area where others may also be involved with narcotics, and the kinds of contraband make it important for speedy and efficient execution of the warrant.
> Even at 6:00 in the morning, the kinds of loud knocking that occurred and noise of the battering that occurred would have caused occupants within, if they had a reasonable belief of their own propriety, to say, "stop, I'll answer the door, don't break in the door, I'm coming," or anything like that. There was no such mention of anything of this, and the officers, I hold, were looking and listening for such evidence, and accordingly, they were justified in ramming down the door.

Carvajal proceeded to trial, where he was found guilty of one count of conspiracy to make and distribute counterfeit currency, four counts of passing counterfeit currency, and one count of conspiracy to distribute crack cocaine. He was found not guilty of distributing crack cocaine, of possessing a firearm in furtherance of a drug-trafficking crime, of illegally possessing a firearm, and of destroying evidence to avoid its seizure. This appeal followed.

4

**II.**

The government and Carvajal dispute the propriety of the agents' actions under the Fourth Amendment and 18 U.S.C. § 3109. Whether such a violation occurred, however, is irrelevant; the exclusionary rule has no application when a defendant alleges a violation of the knock-and-announce rule under either the Fourth Amendment or § 3109. As a result, the district court properly admitted evidence obtained during the search of Carvajal's apartment.

The Fourth Amendment knock-and-announce principle and § 3109 share the same common law roots, overlap in scope, and protect the same interests, which necessitates similar results in terms of the exclusionary rule's application. Section 3109 authorizes federal officers to break open doors or windows for entry or exit in certain circumstances:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109. Although first codified in 1917, *see* Act of June 15, 1917, ch. 30, tit. XI, §§ 8-9, 40 Stat. 229, "[f]rom earliest days, the common law drastically limited the authority of law officers to break the door of a house to effect an arrest." *Miller v. United States*, 357 U.S. 301, 306-07 (1958) (footnote omitted). By enacting § 3109, Congress codified this common law tradition, thereby demonstrating its "reverence of the law for the individual's right of privacy in his house." *Id.* at 313. The Fourth Amendment, the scope of which is established, at least in part, by reference to the traditional protections afforded by the common law, likewise incorporates this principle: The "Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the

5

reasonableness of a search or seizure." *Wilson*, 514 U.S. at 934. Accordingly, under the Fourth Amendment and § 3109, "[e]very householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house." *Miller*, 357 U.S. at 313.

Law enforcement officers who execute a search warrant at a residence generally must give notice of their authority and provide the occupant a reasonable opportunity to respond before entering. *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). The Fourth Amendment's inquiry into the totality of the circumstances surrounding a search incorporates this principle; "the method of an officer's entry into a dwelling [is] among the factors to be considered in assessing the reasonableness of a search or seizure." *Id.* Although suppression provides a potent deterrent for any number of unreasonable searches and seizures under the Fourth Amendment, the Supreme Court in *Hudson*, 126 S. Ct. 2159, concluded that a police officer's violation of the Fourth Amendment knock-and-announce rule does not require suppression of the evidence obtained in the ensuing search.

*Hudson* involved a conceded violation of the Fourth Amendment where state police officers executing a search warrant announced their presence upon arrival, but entered three to five seconds later without permission from the occupant. *Id.* at 2162-63. In holding that the officers' violation of the knock-and-announce rule did not mandate suppression, the Court reasoned that, "[w]hether that preliminary misstep had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." *Id.* at 2164 (emphasis in original). In other words, the "illegal manner of entry was not a

6

but-for cause of obtaining the evidence." *Id.* (emphasis in original omitted). The Court further observed that the "considerable" costs of enforcing the knock-and-announce rule outweighed any benefit that might be gained from suppression. *Id.* at 2165. Applying the exclusionary rule might "generate a constant flood of alleged failures to observe the rule," encourage police officers to wait longer than necessary before entering, and force courts to second-guess law enforcement officers on what constitutes "a reasonable wait time." *Id.* at 2166. Against these costs, the Court found any deterrence value "not worth a lot;" adherence to the rule merely ensures that property will not be destroyed or that occupants will not engage in life-threatening resistance. *Id.* The availability of civil suits, which generate attorneys' fees under 42 U.S.C. § 1988(b), and the "increasing professionalism of police forces" similarly undercut the deterrence value inherent in the exclusionary rule. *Id.* at 2167-68. As a result, the Court found unjustified any "[r]esort to the massive remedy of suppressing evidence of guilt" whenever a police officer's failure to follow the knock-and-announce rule violates the Fourth Amendment. *Id.*

Although *Hudson* forecloses Carvajal's argument that the Fourth Amendment requires suppression of the evidence obtained during the search of his apartment, Carvajal suggests suppression is warranted on an independent ground, namely § 3109. Since *Hudson* involved state law enforcement officers whose actions were governed solely by the Fourth Amendment, the Supreme Court had no occasion to consider whether § 3109 required suppression of the evidence obtained in violation of the knock-and-announce rule. We find that the reasoning in *Hudson* applies with equal force to § 3109, and thus hold that an alleged violation of the statutory knock-and-announce rule cannot form the basis for suppression of the evidence discovered in the

7

ensuing search.

Given the common law origins of § 3109 and the Fourth Amendment's knock-and-announce principle, it is unsurprising that they overlap to a considerable extent. Indeed, we have often observed that the contours of § 3109 coincide with the reasonableness inquiry of the Fourth Amendment. *See United States v. Alejandro*, 368 F.3d 130, 137 (2d Cir. 2004); *Ayeni v. Mottola*, 35 F.3d 680, 687 n.9 (2d Cir. 1994) *abrogated on other grounds by Wilson v. Layne*, 526 U.S. 603 (1999); *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991); *United States v. Mapp*, 476 F.2d 67, 75 (2d Cir. 1973). Because § 3109 "codifies the common law in this area," while "the common law in turn informs the Fourth Amendment," Fourth Amendment cases necessarily "serve as guideposts in construing the statute." *United States v. Ramirez*, 523 U.S. 65, 73 (1998); *see also United States v. Banks*, 540 U.S. 31, 42-43 (2003) (holding officers' entry upon reasonable suspicion of exigent circumstances satisfied both § 3109 and the Fourth Amendment).

Because of this cross-fertilization, both § 3109 and the Fourth Amendment knock-and-announce principle have been held subject to the same exceptions and found to protect similar interests. Three circumstances may justify a no-knock entrance, permitting officers to disregard the knock and announce rule altogether: (1) when law enforcement officers reasonably fear violence may result if they were to announce their presence; (2) when officers have reason to believe evidence may be destroyed if they were to provide notice before entry; or (3) when an announcement by officers would be futile, as may occur when the circumstances indicate that the inhabitants are well aware of the officers' presence. *See Richards v. Wisconsin*, 520 U.S. 385,

8

394 (1997); *United States v. Spinelli*, 848 F.2d 26, 28 (2d Cir. 1988). And like the Fourth Amendment, § 3109 serves three principal interests: "(1) the reduction of potential for violence to both the police officer and the occupants of the house into which entry is sought; (2) the needless destruction of private property; and (3) a recognition of the individual's right of privacy in his house." *United States v. Brown*, 52 F.3d 415, 421 (2d Cir. 1995); *see also Hudson*, 126 S. Ct. at 2165 (identifying identical interests served by the Fourth Amendment). But the knock-and-announce rule, either under the Fourth Amendment or § 3109, has never prevented "the government from seeing or taking evidence described in a warrant." *Hudson*, 126 S. Ct. at 2165. In light of the intersection between § 3109 and the Fourth Amendment, we find no reason to hold the exclusionary rule applicable to alleged violations of § 3109.

Carvajal suggests the lack of a civil remedy for violations of § 3109 requires application of the exclusionary rule to adequately deter federal officers from violating the knock-and-announce rule. A civil cause of action under 42 U.S.C. § 1983, which provides monetary relief when state actors violate federal law or the Constitution, may deter state officers from violating the knock-and-announce principle under the Fourth Amendment. *See Hudson*, 126 S. Ct. at 2166-67. Section 1983, of course, does not apply to allegedly unlawful acts of federal officers, *see Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963), and no other statute provides a civil remedy for violations of § 3109 by federal officers. But the lack of a civil remedy for § 3109 violations does not necessarily compel the conclusion that the deterrence value of the exclusionary rule outweighs its considerable costs, thereby requiring application of the exclusionary rule to evidence obtained in violation of § 3109. As indicated above, § 3109 enjoys

appreciable overlap with the Fourth Amendment. One would think that the facts underlying an alleged violation of § 3109 would form the basis for attacking the propriety of the search as also violative of the Fourth Amendment. *See, e.g.*, *Banks*, 540 U.S. at 41-43; *Alejandro*, 368 F.3d at 137-38. If such is the case, a cause of action for damages may lie against the federal officer under *Bivens v. Six Unknown Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971). The possibility of a *Bivens* claim, as much as a § 1983 claim against a state officer, provides an adequate incentive for federal officers to stay within the bounds of the knock-and-announce rule when executing search warrants. *See United States v. Langford*, 314 F.3d 892, 894-95 (7th Cir. 2002) (observing "that 42 U.S.C. § 1983 and the *Bivens* doctrine have made tort damages an effective remedy for constitutional violations by federal or state law enforcement officers").

We similarly agree with the D.C. Circuit and the Fifth Circuit that no direct precedent from the Supreme Court prevents us from holding the exclusionary rule inapplicable to § 3109. *See Bruno*, 487 F.3d at 306; *Southerland*, 466 F.3d at 1084-86. It is true that, "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court[s] of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). But neither *Miller*, 357 U.S. 301, nor *Sabbath v. United States*, 391 U.S. 585 (1968), stands as direct precedent requiring application of the exclusionary rule when a violation of § 3109 occurs. Section 3109 was not directly at issue in *Miller*, for that case involved a District of Columbia law that the government

10

posited was analogous to § 3109 in deciding the propriety of action by local police officers who neither had a warrant nor stated their purpose upon knocking. 357 U.S. at 306. And "[l]ike *Miller*, *Sabbath* invoked § 3109 by analogy to hold that an entry for the purpose of making an arrest was illegal. It too is not a direct holding under § 3109." *Southerland*, 466 F.3d at 1085.

Just as no Supreme Court precedent stands in the way of our holding, no previous decision of our Court has held that a § 3109 violation requires suppression. Although a number of our previous decisions have suggested in dicta that suppression follows a violation of § 3109, no decision has explicitly ruled as much. For instance, *United States v. Vozzella*, 124 F.3d 389 (2d Cir. 1997), indicated that "[e]vidence seized in violation of Section 3109 must be excluded at trial unless the noncompliance was excused by exigent circumstances," *id.* at 393 (internal quotation mark and citation omitted). That decision, however, ultimately concluded that the record was insufficiently developed to decide whether a violation of § 3109 occurred and thus had no reason to decide whether the exclusionary rule applied. *Id.* at 393-94. Similarly, *Spinelli*, 848 F.2d 26, observed that "[p]roperty seized in violation of § 3109 may be excluded from evidence," *id.* at 28, but had no opportunity to apply the exclusionary rule because no violation of the knock-and-announce rule occurred. Nor did *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975), resolve the matter, for that decision merely observed in a footnote that "it has been generally understood that the exclusionary rule applies to violations of 18 U.S.C. § 3109, the 'knock' statute," *id.* at 386 n.13, without deciding whether and to what extent the exclusionary rule applied to violations of § 3109. Bound by neither a decision from the Supreme Court nor this Court, we hold that alleged violations of § 3109 do not trigger the exclusionary rule.

11

**IV.**

In sum, a claim by a defendant that federal officers violated the knock-and-announce rule under either the Fourth Amendment or 18 U.S.C. § 3109 cannot form the basis for suppression of the evidence obtained in the ensuing search. After due consideration of Carvajal's remaining arguments, we find they lack merit. The judgment of conviction entered by the district court is accordingly AFFIRMED.