Rockingham
No. 2009-328

THE STATE OF NEW HAMPSHIRE

v.

JAMES TARASUIK

Argued: March 31, 2010
Opinion Issued: May 20, 2010

*Michael A. Delaney*, attorney general (*Karin M. Eckel*, assistant attorney general, on the memorandum of law and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, James Tarasuik, appeals an order of the Superior Court (*Nadeau*, J.) denying his motion to suppress evidence of his possession of a controlled drug, obtained during a warrantless entry into his hotel room. We affirm.

The following facts are supported by the record. In February 2008, the defendant and Rebecca Harwood lived together in a hotel room at the Hampton Village Resort in Hampton. At the time, Harwood was on probation, and, therefore, had to abide by the standard conditions of probation. One condition required her to allow her probation officer to periodically search her residence. At the commencement of her probation term, Harwood signed a form agreeing to random searches.

Although the defendant was living with Harwood, Harwood's probation officer never reviewed the conditions of her probation with him. Thus, he never told the defendant that an officer could engage in periodic searches of Harwood's residence and that if the defendant refused to permit a search of the residence, Harwood would have to move elsewhere.

On February 4, 2008, two probation officers, John Clemons and Al Previte, arrived at the Hampton Village Resort to ensure that Harwood was complying with the terms of her probation. Officer Clemons was Harwood's probation officer. The defendant answered when the probation officers knocked on the door. Accounts differ as to what occurred next. Officer Previte testified that after he identified himself, the defendant said, "[C]ome in," while Officer Clemons testified that the defendant neither consented to nor denied them entry. Harwood testified that she did not hear the defendant consent to the officers' entry or search of the room.

Officer Clemons then began to search the room while Officer Previte spoke with Harwood and the defendant. Officer Previte testified that the defendant and Harwood gave non-verbal signals that they were displeased

with the search. He acknowledged that the defendant's body language made clear that he was unhappy with the search, but he did not recall the defendant verbally objecting to it. Harwood, however, testified that the defendant told Officer Clemons not to look in his nightstand. Harwood further testified that she and the defendant had separate nightstands, but, later, admitted that there was only one nightstand, located between the beds.

During his search, Officer Clemons discovered a plate, containing a razor blade and cocaine, on the shelf of the nightstand. Under questioning, the defendant admitted that the cocaine belonged to him. He was then arrested.

Prior to trial, the defendant moved to suppress evidence of the cocaine, arguing that he did not consent to the warrantless search of the hotel room. The trial court denied the motion and the defendant proceeded to trial. A jury found the defendant guilty of possession of a controlled drug. *See* RSA 318-B:2, I (2004) (amended 2009).

On appeal, the defendant contends that the search of his hotel room violated his rights under the Fourth Amendment of the United States Constitution and Part I, Article 19 of the New Hampshire Constitution. Specifically, he argues that while Harwood consented to the officers' entry, he did not. Therefore, the officers did not have permission to enter the hotel room and search it.

Because the defendant's appeal is primarily based upon the United States Supreme Court's decision in *Georgia v. Randolph*, 547 U.S. 103 (2006), the State contends that the defendant was required to cite it in his motion to suppress. According to the State, the defendant failed to preserve this issue for appeal because he "initially argued below in general terms, without citing to any specific authority, that his Fourth Amendment rights were violated because the officers conducted the search without first obtaining his consent."

■ We acknowledge that "[i]ssues must be properly presented to the trial court in order to preserve them for appellate review." *State v. Fortier*, 146 N.H. 784, 788 (2001). "This rule is grounded in common sense and judicial economy and allows the trial court to consider errors as they occur and to remedy them as necessary." *Id.* (quotation omitted). An argument is properly preserved if the trial court has the "opportunity to rule on issues and to correct errors before they are presented to the appellate court." *State v. Ayer*, 150 N.H. 14, 21 (2003).

■ Here, the defendant adequately preserved the issue. This case is analogous to *State v. Demeritt*, 148 N.H. 435, 439 (2002), where we stated that "[w]hile defense counsel did not specifically state that the admission of

the defendant's statement would violate his due process rights, the exchange made clear to the trial judge that due process was the basis of the objection." In *Demeritt*, we found the objection specific enough to preserve the issue on appeal. *Demeritt*, 148 N.H. at 439; *see also State v. Schachter*, 133 N.H. 439, 440 (1990). Although the defendant did not specifically refer to *Randolph*, the language of his suppression motion mirrored the holding in *Randolph*. *See Randolph*, 547 U.S. at 120. In *Randolph*, the Supreme Court held that if one resident gives consent but another resident expressly refuses to do so, the police may not engage in a warrantless search of a shared dwelling. *Id.* Likewise, in his motion to suppress, the defendant acknowledged that "[t]he State may have had the authority to search the property of Ms. Harwood," but argued that "the [d]efendant exercised his right not to consent to the Officer's search." Moreover, at trial, the defendant cited *Randolph* when he asked the court to reconsider his motion to suppress.

We address the defendant's argument first under the State Constitution and refer to federal opinions to aid our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). When reviewing the trial court's order on a motion to suppress, we accept the trial court's "factual findings unless they lack support in the record or are clearly erroneous," and we review legal conclusions *de novo*. *State v. Brown*, 155 N.H. 164, 167 (2007).

■■ The defendant argues that rather than accept the trial court's factual findings, we must review the record *de novo* because the trial court neglected to make a finding as to whether the defendant consented to the officers' entry. Because of the important constitutional issues implicated in a motion to suppress, we have stated that the presiding judge "must make sufficient findings of fact and rulings of law to permit meaningful appellate review." *State v. Farnsworth*, 126 N.H. 656, 660 (1985). Here, in its pretrial order denying the defendant's suppression motion, the trial court noted that "both the defendant and the probationer, Rebecca Harwood were living at the hotel room and had equal control over it." (Bolding and capitalization omitted.) It provided no further findings of fact.

However, at trial, the court made additional findings. At the conclusion of the State's case, the defendant orally moved for reconsideration of his motion to suppress, arguing that under *Randolph*, "even if there is consent, if there is refusal by another occupant at the residence, . . . that consent is no longer valid." In response, the trial court found that "[t]he defendant, himself, opened the door" and that "[t]here was no withdrawal of any consent." Accordingly, we decline to conduct a *de novo* review.

■ Under Part I, Article 19 of the New Hampshire Constitution, warrantless searches are *per se* unreasonable unless they fall within the

narrow confines of a judicially crafted exception. *State v. Denoncourt*, 149 N.H. 308, 310 (2003). "A voluntary consent free of duress and coercion is a recognized exception to the need of both a warrant and probable cause." *Ayer*, 154 N.H. at 519 (quotation omitted). The State bears the burden to establish by a preponderance of the evidence, "based upon the totality of the circumstances, that the consent was free, knowing, and voluntary." *State v. Sawyer*, 145 N.H. 704, 706-07 (2001). "We will disturb the trial court's finding of consent only if it is not supported by the record." *Ayer*, 154 N.H. at 520 (quotation omitted).

■ "The search of a home is subject to a particularly stringent warrant requirement because the occupant has a high expectation of privacy." *State v. Pseudae*, 154 N.H. 196, 199 (2006). Likewise, we have stated that "the privacy interest in a hotel room is comparable to that of the home." *State v. Watson*, 151 N.H. 537, 540 (2004); *see Minnesota v. Olson*, 495 U.S. 91, 96-97, 99 (1990) (finding that an overnight guest, whether staying at a hotel room or at a friend's home, has a reasonable expectation of privacy). *But see Watson*, 151 N.H. at 542 (Broderick C.J., concurring specially) ("Whether the privacy interest in a hotel room is comparable to that of the home, or diminished from it — and if so, to what extent — remains an undecided issue in this State."). Here, the defendant lived in the hotel room and had a reasonable expectation of privacy.

■■ As a general rule, however, "[c]onsent to search is valid against a defendant when conferred by a third party with common authority over or other sufficient relationship to the premises or effects sought to be inspected." *State v. Sodoyer*, 156 N.H. 84, 86 (2007) (quotation omitted); *see United States v. Matlock*, 415 U.S. 164, 171 (1974). Here, Harwood had authority to consent to the search because she was living in the hotel room with the defendant. *Cf. State v. Coyman*, 130 N.H. 815, 819 (1988) (finding that a landlord had authority to consent to a search of a tenant's living room where there was ample evidence that the landlord and tenant had a living arrangement "akin to roommates"). Moreover, Harwood did consent to the search. As a condition of her probation, she signed a form consenting to searches of her residence by her probation officer. *See State v. Zeta Chi Fraternity*, 142 N.H. 16, 30, *cert. denied*, 522 U.S. 995 (1997).

Although Harwood consented to the search, the defendant argues that because he did not consent, Harwood's consent was ineffective as to him under the rule established in *Randolph*. In *Randolph*, the police responded to a domestic dispute and found both the defendant and his wife at the door. *Randolph*, 547 U.S. at 107. While the defendant's wife gave the police consent to search the house, the defendant "unequivocally refused" consent. *Id.* The police searched the home while ignoring the defendant's

protests. *Id.* The Court held "that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120. The Court reasoned that "there is no common understanding that one co-tenant generally has a right or authority to prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders." *Id.* at 114.

■*Randolph* limits the general rule that consent provided by a co-tenant is valid against another co-tenant in cases in which a present co-tenant expressly refuses consent. *Randolph*, 547 U.S. at 120, 122-23; *Matlock*, 415 U.S. at 171; *Sodoyer*, 156 N.H. at 86. However, in this case, as the defendant concedes, he did not expressly refuse consent.

■ The defendant argues that he presented non-verbal cues that he was uncomfortable with the search, and if either officer had asked him for consent to search, he would have refused. Even if we assume that the defendant's body language implied that he did not consent to the search, the defendant's argument under *Randolph* fails. *Randolph* applies only when an occupant "expressly refuses to consent," which did not occur here. *Id.* at 106. Additionally, the Supreme Court has acknowledged that officers do not have to ask all potential objectors whether they are willing to consent to the search:

> [W]e have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

*Id.* at 121. Here, the officers were not required to ask the defendant for his permission to search the hotel room.

The defendant further argues that our holding in *Sawyer* warrants a reversal of the trial court's decision because his non-verbal behavior implied that he did not consent to the search. We disagree. In *Sawyer*, an officer escorted the defendant to her apartment to obtain a form of identification. *Sawyer*, 145 N.H. at 705. Although the officer neither asked for permission to enter the apartment nor received an invitation from the defendant, he followed her into her apartment. *Id.* There, we held that the officer violated the defendant's rights when he entered her apartment, reasoning that "where consent is not explicitly given, the surrounding circumstances must demonstrate by the preponderance of the evidence that the defendant's implied consent to permit entry was unambiguous." *Id.* at 707.

*Sawyer* applies only "[w]here consent is not explicitly given." *Id.* Here, Harwood, an individual possessing actual authority, explicitly consented to the search. Since consent is valid "when conferred by a third party with common authority," the only way the defendant could have prevented the search is through an express refusal of consent. *Sodoyer*, 156 N.H. at 86 (quotation omitted); *see Randolph*, 547 U.S. at 120. That did not occur in this case.

 Because we find the Supreme Court's decision in *Randolph* persuasive, we adopt it for purposes of our state constitutional analysis under Part I, Article 19. Given that Harwood provided valid consent and that the defendant did not expressly refuse consent, we find no error under the State Constitution in the trial court's denial of the defendant's motion to suppress.

We reach the same result under the Federal Constitution. *See Randolph*, 547 U.S. at 120.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.