Hillsborough-northern judicial district
No. 2009-523

### THE STATE OF NEW HAMPSHIRE

v.

### MATTHEW SCONSA

Argued: June 10, 2010
Opinion Issued: November 10, 2010

*Michael A. Delaney*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Wilson, Bush, Durkin & Keefe, P.C.*, of Nashua (*Charles J. Keefe* on the brief and orally), for the defendant.

BRODERICK, C.J. The defendant, Matthew Sconsa, appeals his conviction on one count of possession of a controlled drug, RSA 318-B:2; RSA 318-B:26, II(a), arguing that the Trial Court (*Smukler*, J.) erred when it denied his motion to suppress evidence seized as a result of the police executing an arrest warrant in violation of the knock and announce rule. We affirm.

We recite the facts as found by the trial court, which are not disputed on appeal. On July 20, 2008, Officer Brian Karoul was on routine patrol in the vicinity of a hotel in Manchester. Being aware that this hotel had been the site of frequent criminal activity, he obtained a list of the registered guests from the hotel clerk and discovered that an electronic bench warrant was

outstanding for the defendant, who was registered as a guest in room 311. Contacting dispatch, the officer confirmed that the arrest warrant was valid and requested backup. Two officers soon arrived.

The three fully uniformed officers approached room 311, and Officer Karoul knocked on the door. He received no immediate response, but heard sounds of scurrying, rummaging and running water. After he knocked three or four more times, a woman opened the door. Officer Karoul asked her whether "Matthew" was there, and she responded, "Yes, he's [lying] on the bed." She then pointed to an area inside the hotel room, but the officer could not see the bed from his vantage point. He called out for "Matthew" and received no answer. The woman did the same and, again, Officer Karoul heard no response. Leaving the door open, the woman then turned to walk into the room in the direction of the bed, and two officers followed her. They did not ask permission to follow her into the hotel room or declare that their purpose was to execute the arrest warrant. The police did not use any physical force to gain entry, and no one objected to their entry.

Once inside the room, Officer Karoul saw the defendant lying face down on the bed, with his hands under a pillow. He instructed the defendant to remove his hands from under the pillow, and he complied. When asked for identification, the defendant responded that he did not have any but stated that he was "Matthew Sconsa." He also gave Officer Karoul an accurate birth date. At this point, Officer Karoul told the defendant that he was under arrest. Before leaving the hotel room, the defendant requested that the police retrieve his money and identification located inside a bureau drawer. When Officer Karoul opened the drawer, he observed a plastic baggie which the defendant subsequently agreed contained cocaine resting on top of the defendant's wallet.

The State later charged the defendant with one count of possession of a controlled drug. The defendant filed a motion to suppress, arguing that the police officers failed to comply with the knock and announce rule when they executed the arrest warrant and that the cocaine they seized should not be admitted into evidence. Following a hearing during which Officer Karoul testified, the trial court ruled that the entry by the police into the hotel room did not warrant suppression of the evidence under either federal or state law. It first concluded that the defendant did not point to any facts "that ma[de] the alleged violation particularly egregious or unreasonable and would thus support suppression" under federal law. It also determined that the police entry was not forcible and, accordingly, did not violate the knock and announce rule under state law. Finally, it determined that even assuming some forcible entry occurred, any violation was technical and not so flagrant so as to implicate the State Constitution's prohibition against unreasonable searches and seizures. After a bench trial on stipulated facts,

the trial court found the defendant guilty of the possession charge and imposed sentence. This appeal followed.

The defendant argues that the trial court erred in both its construction and application of the knock and announce rule under federal and state law. First, he argues that the trial court erred when it ruled that the knock and announce rule did not apply because the police had not forcibly entered his hotel room. He contends that police entry without invitation or permission amounts to forcible entry in the knock and announce context, and that the police failed to satisfy the knock and announce rule in this case.

Second, the defendant argues that the trial court incorrectly found that the knock and announce rule did not have a constitutional basis. He contends that the rule is an element of the reasonableness inquiry under the Fourth Amendment to the Federal Constitution, and he urges us to hold the same under Part I, Article 19 of the State Constitution. He argues that given the constitutional sanctity of a private dwelling, and the deliberate violation of the knock and announce rule in this case, the evidence should be suppressed under the Fourth and Fourteenth Amendments to the United States Constitution and Part I, Article 19 of the New Hampshire Constitution.

For its part, the State argues that the knock and announce rule is not implicated when the police gain entry into a dwelling through an open door without applying any physical force. It contends that "[r]equiring police officers to comply with the knock-and-announce rule after the door is opened in response to an officer's knock makes little sense," and that nearly universally among state and federal courts, compliance with the knock and announce rule is not required in such a circumstance.

Alternatively, the State argues that any technical violation of the knock and announce rule did not infringe upon the defendant's constitutional rights because, as the trial court found, the method of police entry in this case was reasonable under the New Hampshire and Federal Constitutions. Finally, the State argues that the exclusionary rule is not an appropriate remedy for violations of the knock and announce rule, because unlike in warrantless entries, police officers have the authority to enter the private dwelling of the target of an arrest warrant, and the arrestee has no right to refuse their entry, but only a right to submit voluntarily.

When reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous, and we review legal conclusions *de novo*. *State v. Tarasuik*, 160 N.H. 323, 327 (2010). We first address the defendant's arguments under the State Constitution, citing federal court opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231-33 (1983). We assume for purposes of this appeal that the defendant's hotel room is comparable to his home for state and

federal constitutional purposes because the parties do not dispute it. *See, e.g., Tarasuik*, 160 N.H. at 328; *United States v. Pelletier*, 469 F.3d 194, 199 (1st Cir. 2006). *But see State v. Watson*, 151 N.H. 537, 542 (2004) (Broderick, C.J., concurring specially) ("Whether the privacy interest in a hotel room is comparable to that of the home, or diminished from it — and if so, to what extent — remains an undecided issue in this State").

■■ Under New Hampshire law, when executing an arrest or a search warrant, police officers, before forcibly entering a dwelling, should knock, identify themselves and their purpose, and demand admittance. *See State v. Jones*, 127 N.H. 515, 518 (1985); *State v. Thompson*, 132 N.H. 730, 732-33 (1990). This rule is based upon common law:

> "In all cases when the King . . . is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors . . . ."

*Jones*, 127 N.H. at 517 (quoting *Semayne's Case*, 5 Coke 91, 77 Eng. Rep. 194, 195 (1604)). The knock and announce rule "protect[s] citizens' rights to privacy in their homes and prevent[s] unnecessary violence which could result from unannounced entries." *Id.* at 518; *see also Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (policies underlying knock and announce rule include protecting life by avoiding unnecessary violence, protecting property by avoiding unnecessary breaking into private dwellings, and protecting privacy by affording occupants opportunity "to collect [themselves] before answering the door"). Our State knock and announce rule "applies only when a police officer forcibly enters a dwelling." *State v. Coyman*, 130 N.H. 815, 821 (1988) (emphases omitted); *see Jones*, 127 N.H. at 520. When first adopting the State rule, we noted that "it is usually held that almost any force, however slight, triggers the [knock and announce] requirement." *Jones*, 127 N.H. at 520.

We have yet to determine whether the exclusionary rule applies when police seize evidence in the course of executing a lawful arrest warrant in the defendant's dwelling in a manner that violates the State knock and announce rule. We need not reach this issue today, however, because we conclude that the trial court correctly determined that the police entry was not forcible in this case, and, thus, the State knock and announce rule does not apply.

■ The defendant argues that the uninvited entry through an open door of his dwelling constituted a forcible entry. Relying upon *Jones* and *Coyman*, he contends that we have "explicitly recognized . . . that police

'forcibly' enter a defendant's dwelling when they do so without permission." After reviewing our case law, however, we conclude that we have not previously held, either explicitly or implicitly, that uninvited entry by the police through an open door, without any use of physical force, necessarily implicates the State knock and announce rule. Rather, we have determined that *invited* entry does *not* constitute forcible entry, *Coyman*, 130 N.H. at 821, and have characterized the knock and announce rule as providing protection to citizens and police in the context of "unannounced entries," *Jones*, 127 N.H. at 518.

The defendant also relies upon several cases from other jurisdictions to argue that forcible entry includes situations in which the police enter an open door of a dwelling without invitation or permission. He cites cases in which police entered through an open doorway or an unlocked door and their presence was not announced prior to entry. *See, e.g., State v. LaPonsie*, 664 P.2d 223, 224-25 (Ariz. Ct. App. 1982); *State v. Sakellson*, 379 N.W.2d 779, 781-84 (N.D. 1985); *People v. Keogh*, 120 Cal. Rptr. 817, 820-22 (Ct. App. 1975); *State v. Miller*, 499 P.2d 241, 242-45 (Wash. Ct. App. 1972). Even if we assume that the police entered through the open door of the hotel room without invitation, we are not persuaded by the cases relied upon by the defendant that the entry was forcible for purposes of the State knock and announce rule under the facts before us.

 Here, the police knocked on the door of the defendant's hotel room, and a woman opened the door. The police, who were in full uniform, asked for "Matthew" and the woman informed them that Matthew was lying on the bed, pointing to an area inside the hotel room. Both the police and the woman called out the defendant's name and no response was heard. The woman turned to walk into the room in the direction of the bed, leaving the door open. As she did so, the police followed her into the room, without any use of physical force and without encountering any physical, verbal or other display of resistance. As the trial court found, "the officers did not open any doors, nor was there evidence that the officers had to push the door farther open in order to enter. . . . The officers simply followed [the woman] into the hotel room via the door she had opened to them." This is not a case where the police failed to disclose their presence and identity while violently or stealthily entering a dwelling to execute an arrest warrant. Rather, a woman opened the door to answer their knock, their presence and identity were obvious, and their entry was entirely peaceable through a door opened to them and left open by the woman who had turned and walked into the room when no response from the defendant was heard.

Our holding that the knock and announce rule is not implicated in this case comports with the policies underlying the rule. *See Jones*, 127 N.H. at

518; *Hudson*, 547 U.S. at 594; *see also Sabbath v. United States*, 391 U.S. 585, 589-90 (1968) (interpreting whether knock and announce statute applied in a manner that comports with purposes of the common law rule). In this case, the risk of provoking violence was *de minimus* given that the police peaceably entered through a door opened to them and left open by the woman, and they followed her as she turned and walked into the room. Additionally, the interest in preventing the destruction of private property was not at issue because the police applied no physical force whatsoever to gain entry. Finally, privacy and dignity were not compromised by some sudden or stealthy, unexpected or unannounced entry. Here, the door was voluntarily opened by the woman in response to knocking, she pointed to where the defendant was located, the police called out the defendant's name, and the police followed her as she turned and walked into the room to get the defendant's attention. Because we hold that no forcible entry occurred, and, thus, the knock and announce rule is not implicated in this case, we do not address the remainder of the defendant's state law arguments.

■ We turn to the defendant's federal constitutional argument. "The Fourth Amendment incorporates the important common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1289 (11th Cir. 2006); *see Hudson*, 547 U.S. at 589 (knock and announce requirement is "a command of the Fourth Amendment"). Compliance with the knock and announce requirement "is an element of the reasonableness inquiry under the Fourth Amendment." *Wilson v. Arkansas*, 514 U.S. 927, 931-32, 934 (1995); *see also United States v. Young*, 609 F.3d 348, 353 (4th Cir. 2010).

■ The common law knock and announce rule also is codified in federal law, 18 U.S.C. § 3109 (2006). *Hudson*, 547 U.S. at 589; *Jones*, 127 N.H. at 518. Although the federal statute does not apply to state and local police officers, section 3109 and the knock and announce requirement embodied in the Fourth Amendment share the same common law roots, overlap in scope, and protect the same interests. *See United States v. Acosta*, 502 F.3d 54, 57 (2d Cir. 2007), *cert. denied*, 552 U.S. 1154 (2008); *see also Young*, 609 F.3d at 353 (Fourth Amendment knock and announce requirement is reflected in 18 U.S.C. § 3109); *United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir. 1994) (section 3109 encompasses the constitutional requirement of the Fourth Amendment), *cert. denied*, 513 U.S. 1128 (1995); *United States v. Andrus*, 775 F.2d 825, 844 (7th Cir. 1985) (the Fourth Amendment "embraces the principles of § 3109"). Thus, it is appropriate to rely upon jurisprudence relative to section 3109 as informing the scope of the

requirement as embodied in the Fourth Amendment. *Kennedy*, 32 F.3d at 882 (section 3109 provides the proper framework for analyzing the execution of state search warrants); *Acosta*, 502 F.3d at 57-58 (knock and announce principle under Fourth Amendment informs the meaning of section 3109); *see also United States v. Ramirez*, 523 U.S. 65, 70 (1998) (using Fourth Amendment knock and announce cases to inform meaning of federal statute).

■ The knock and announce requirement embodied in the Fourth Amendment is implicated when police forcibly enter, or break open the doors of, a dwelling to execute a warrant. *See Wilson*, 514 U.S. at 929; *Young*, 609 F.3d at 353; *United States v. Gatewood*, 60 F.3d 248, 250 (6th Cir.), *cert. denied*, 516 U.S. 1001 (1995); *see also United States v. Lucht*, 18 F.3d 541, 549 (8th Cir.), *cert. denied*, 513 U.S. 949 (1994). The majority rule among federal jurisdictions is that police entry through an open door to execute a warrant does not implicate the knock and announce rule. *See, e.g.*, *United States v. Remigio*, 767 F.2d 730, 732-33 (10th Cir.), *cert. denied*, 474 U.S. 1009 (1985) (collecting cases that hold that police entry through an open door is not a "breaking" within the meaning of the federal knock and announce statute); *State v. Dixon*, 924 P.2d 181, 186 (Haw. 1996) (noting that federal courts have held, "virtually universally," that federal knock and announce rule is not implicated when police use deception, without force, to cause occupant to open the door, and thereby effect police entry into a house because such entry is not a "breaking" under the federal statute).

■ Here, the police, in full uniform, entered the hotel room to execute a valid arrest warrant after a woman opened the door in response to their knocking and informed them that the defendant was inside the room, following her through the door that she had left open as she turned to walk into the room in the direction of the defendant's location. Therefore, even assuming that suppression of the seized cocaine would be an available remedy in this case, *but see Hudson*, 547 U.S. at 592-99; *United States v. Jones*, 523 F.3d 31, 37 (1st Cir.), *cert. denied*, 129 S. Ct. 228 (2008); *Acosta*, 502 F.3d at 59, we conclude that the police conduct in this case did not amount to a forcible entry or a breaking, and, thus, did not trigger the knock and announcement requirement embodied in the Fourth Amendment. Accordingly, we reject the defendant's argument that the evidence should be suppressed under the Fourth and Fourteenth Amendments to the United States Constitution and Part I, Article 19 of the New Hampshire Constitution.

*Affirmed.*

DALIANIS, HICKS and CONBOY, JJ., concurred.