UNITED STATES of America,
Appellee,

v.

Ricky P. WALLACE, Defendant–
Appellant.

No. 05–1424–cr.

United States Court of Appeals,
Second Circuit.

July 8, 2008.

See also, 532 F.3d 126.

Bruce R. Bryan, Syracuse, NY, for Appellant.

Brett A. Harvey, Assistant United States Attorney (Terrance P. Flynn, United States Attorney for the Western District of New York, on the brief), United States Attorney's Office for the Western District of New York, Rochester, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. AMALYA L. KEARSE and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Ricky P. Wallace appeals from a judgment entered on February 28, 2005 in the United States District Court for the Western District of New York (Siragusa, *J.*). After a jury trial, Wallace was convicted of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of marijuana, in violation of 21 U.S.C. § 844(a). He was sentenced principally to 87 months' imprisonment.

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. When the Rochester police executed a search warrant at the apartment Wallace shared with his father, they recovered from Wallace's bedroom, *inter alia*, (1) more than a dozen small ziplock bags containing a total of 1.5 grams of cocaine base, (2) a dinner plate holding numerous new and unused small ziplock baggies, a ziplock bag containing numerous new and unused smaller ziplock plastic bags (each bearing a green dollar sign symbol), and a dresser drawer full of empty and unused glassine ziplock bags, (3) 91.22 grams of marijuana, (4) an AK–47 semi-automatic assault weapon, (5) two ammunition clips (each containing 30 bullets), (6) additional ammunition for .38 and .44 caliber firearms, and (7) $460 in cash. During the search, Wallace told the officers that he lived in the apartment and that the firearm belonged to him. After his arrest, Wallace admitted that he had cocaine base and marijuana to use and share with his friends. He further stated that his father and a friend purchased the gun legally, which Wallace then kept for his own protection.

■ 1. Wallace argues that the officers who executed the warrant violated the knock-and-announce requirement of the Fourth Amendment. *See Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (declining to create *per se* exception to the knock-and-announce requirement for the execution of a search warrant in a felony drug investigation). But even assuming such violation, it would not require suppression of the evidence obtained during the search. *United States v. Acosta,* 502 F.3d 54, 58 (2d Cir.2007) (citing *Hudson v. Michigan,* 547 U.S. 586, 594, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), for proposition that "a police officer's violation of the Fourth Amendment knock-and-announce rule does not require suppression of the evidence obtained in the ensuing search").

■ 2. Wallace argues that the District Court's denial of his *Batson* claim was clearly erroneous, the government having exercised a peremptory challenge against the only African–American venireman.

*Batson* set down a three-step test to determine whether a peremptory challenge violated the Equal Protection Clause:

> First, the defendant must establish a *prima facie* case of discrimination. Second, the prosecutor must offer an explanation for the strike that is, on its face, race-neutral. Third, the trial court must determine whether the defendant has carried her burden of proving that the government's proffered reason was pretextual, and that the strike was indeed motivated by purposeful discrimination.

*United States v. Brown,* 352 F.3d 654, 660 (2d Cir.2003) (citing *Batson v. Kentucky,* 476 U.S. 79, 97–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). "Once a trial judge finds that a prosecutor has exercised his peremptory challenges without discriminatory intent, that finding 'may not be disturbed on appeal unless it is clearly erroneous.'" *Brown,* 352 F.3d at 661 (quoting *United States v. Franklyn,* 157 F.3d 90, 97 (2d Cir.1998)).

The prospective juror had two cousins who had previously been convicted of drug crimes. *See Green v. Travis,* 414 F.3d 288, 300 (2d Cir.2005) (approving as race-neutral a prosecutor's policy of "avoid[ing] selecting jurors who had personal or family experience with narcotics"). The government exercised a peremptory challenge against a white prospective juror for the same reason. *Cf. Snyder v. Louisiana,* — U.S. ——, 128 S.Ct. 1203, 1211, 170 L.Ed.2d 175 (2008) (holding that prosecutor's proffered reason for striking prospective African–American juror was pretextual where, *inter alia,* prosecutor accepted "white jurors who disclosed conflicting obligations that appear to have been at least

as serious" as those of the African–American juror). In view of those circumstances, we see no error in the District Court's decision to credit the government's proffered explanation for the peremptory strike.

■ 3. Wallace challenges his sentence as procedurally unreasonable. Specifically, he argues that the District Court erred in calculating the drug quantity for purposes of determining the applicable offense level under the advisory Guidelines.[1]

A district court must "find facts relevant to sentencing by a preponderance of the evidence." *United States v. Vaughn,* 430 F.3d 518, 526 (2d Cir.2005). We review "factual findings regarding drug quantity only for clear error." *United States v. Richards,* 302 F.3d 58, 68 (2d Cir.2002).

Wallace argues that it was impermissible for the District Court to convert the $460 cash seized from Wallace's bedroom into 4.6 grams of cocaine base (premised on trial testimony that .10 gram of cocaine base sold for between $10 and $20 on the street). This argument is defeated by *United States v. Jones,* 531 F.3d 163, 176 (2d Cir.2008) ("[W]e hold that a district court may equate seized currency to a quantity of drugs, at least when a preponderance of the evidence indicates that the currency was used to purchase drugs."); *see also* U.S.S.G. § 2D1.1 App. Note 12 (2004) ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance ..."); *United States v. Tokars,* 95

---

1. The District Court appears to have committed an arithmetic error in calculating the drug quantity. It found that Wallace was accountable for a total of 6.1 grams of cocaine base (4.6 grams based on the cash seized plus 1.5 grams seized directly). However, it stated on the record that Wallace was accountable for 5.1 grams of cocaine base. The error is harmless; either way, Wallace's offense level is 26.

F.3d 1520, 1542 (11th Cir.1996) ("[M]oney attributable to the drug transactions may be converted to the equivalent amount of drugs for purposes of determining the drug quantity.").

Moreover, the District Court's finding that the $460 found in Wallace's bedroom was "money gained through drug sales" made by Wallace was not clearly erroneous. At sentencing, defense counsel argued that despite Wallace's unemployment and lack of any means of support, he received legitimate financial support from his father's disability payments, which Wallace essentially managed. But Wallace presented no evidence to quantify the disability payments and no evidence, other than his own testimony, to show that the money seized was in fact part of his father's disability money. (Although Wallace's father testified at trial, he did not state that the seized cash belonged to him.)

■ Wallace also argues that the District Court ran afoul of the requirement that "in calculating the quantity of drugs relevant for purposes of sentencing under 21 U.S.C. § 841, any fractional quantity of drugs intended for personal use must be excluded." *United States v. Williams*, 247 F.3d 353, 358 (2d Cir.2001). As Wallace failed to raise this argument in the District Court, we review it for plain error. *United States v. Gilmore*, 471 F.3d 64, 66 (2d Cir.2006). We detect no error here, and certainly none that is plain.

Wallace overreads *Williams*. There, remand was warranted because there was "nothing in the record that would permit this court to affirm [the sentencing court's] conclusion as to the quantity of cocaine that [the defendant] intended to distribute." *Williams*, 247 F.3d at 359. Here, by contrast, the District Court found that the 1.5 grams of cocaine seized during the search were possessed for purposes of distribution. Wallace testified that all of the

cocaine base was for his personal use and that he had divided it among 15 bags not for sale but only so that, when sharing the drug with friends, he would avoid revealing how much he possessed and prompting them to ask for more. Contrary to Wallace's view, the District Court plainly was not required to believe that testimony. The court was entitled to reject that explanation both as not credible on its face and as contraindicated by the facts that (a) a confidential informant had made two purchases of cocaine base from a person meeting Wallace's general description in Wallace's apartment the week before the search warrant was executed, (b) in executing the search warrant, the police found in each of three areas of Wallace's bedroom numerous new, unused and small ziplock plastic bags of the type commonly used to distribute cocaine base, and (c) Wallace took the position that he was unemployed and had no means of support aside from his father's disability checks and that all the money found in the apartment belonged to his father, thus making it permissible to infer that he lacked any legitimate income with which to purchase bulk quantities of cocaine base for his personal use and for sharing *gratis* with his friends.

4. Wallace challenges his sentence as substantively unreasonable.

We review a sentence for reasonableness using "the deferential abuse-of-discretion standard of review that applies to all sentencing decisions." *Gall v. United States*, —— U.S. ——, 128 S.Ct. 586, 598, 169 L.Ed.2d 445 (2007). That this Court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 597. Having reviewed the record, we cannot conclude that the District Court abused its discretion in sentencing Wallace to an 87–month prison

term, the bottom of the applicable advisory Guidelines range.

Finally, Wallace filed briefs *pro se,* raising a number of issues concerning the accuracy of the trial transcripts, misconduct on the part his trial counsel, and his appellate counsel's transcription of the handwritten *pro se* briefs. We have reviewed those claims and find them to be without merit.

For the reasons stated in this summary order (and the accompanying opinion), the judgment is **AFFIRMED** as to the conviction and the case is **REMANDED** to the District Court for consideration of resentencing.